1  Deborah C. Prosser (SBN 109856)
   Stephanie A. Hingle (SBN 199396)
2  KUTAK ROCK LLP
   515 So. Figueroa Boulevard
3  Suite 1240
   Los Angeles, CA 90071
4  Telephone:  (213) 312-4000
   Facsimile:  (213) 312-4001
5  Email:  Deborah.Prosser@KutakRock.com
   Email:  Stephanie.Hingle@KutakRock.com
6
   Attorneys for Defendants
7  GENERAL ELECTRIC COMPANY and
   GE HEALTHCARE INC.
8

9              UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

11  CAROL MOORHOUSE and          CASE NO.
12  JAMES MOORHOUSE,

13            Plaintiffs,          **NOTICE OF REMOVAL OF ACTION
                                   UNDER 28 U.S.C. § 1441 (b)
14      v.                         (DIVERSITY)**

15  BAYER  HEALTHCARE             **[Jury Trial Demanded]**
    PHARMACEUTICALS, INC.;
16  BAYER HEALTHCARE LLC;         (Los Angeles County Superior Court Case
    GENERAL ELECTRIC              No. CGC-08-472978)
17  COMPANY; GE HEALTHCARE,
    INC; COVIDIEN, INC.;
18  MALLINCKRODT, INC.;
    BRACCO DIAGNOSITRICS, INC.;
19  MCKESSON CORPORATION;
    MERRY X-RAY CHEMICAL
20  CORP.; and DOES 1 through 35

21            Defendants.

22

23

24      TO  THE  COURT,  ALL  PARTIES  AND  THEIR  ATTORNEYS  OF

25  RECORD:

26  ///

27  ///

28  ///

1    **PLEASE TAKE NOTICE** that Defendants General Electric Company and

2    GE Healthcare Inc. (hereinafter "the GE Defendants"), by their undersigned

3    attorneys, hereby remove the above-entitled state court action, Case No.: CGC-08-

4    472978, from the Superior Court of the State of California, County of San

5    Francisco, to the United States District Court for the Northern District of California,

6    San Francisco, on the basis of diversity jurisdiction.  In support of this Notice of

7    Removal, the GE Defendants state as follows:

8        1.    Introduction

9        This case is hereby removed from state court to federal court because there is

10   complete diversity between Plaintiffs Carol Moorhouse and James Moorhouse

11   ("Plaintiffs") and all properly named and served Defendants, Bayer Healthcare

12   Pharmaceuticals, Inc., Bayer Healthcare LLC, General Electric Company, GE

13   Healthcare Inc., Covidien, Inc., Mallinckrodt Inc., and Bracco Diagnostics, Inc. (the

14   "Manufacturing Defendants"). The GE Defendants are informed and believe that

15   McKesson Corporation and Merry X-Ray Chemical Corp. (the "Distributor

16   Defendants") are nominal defendants which have been fraudulently joined, and

17   thus, their citizenship is not considered for purposes of determining diversity

18   jurisdiction.  Further, the amount in controversy exceeds $75,000.00.  Therefore,

19   this Court has original jurisdiction under 28 U.S.C. § 1332.

20       2.    The State Court Action

21       On or about March 5, 2008, a civil action was commenced in the Superior

22   Court of the State of California in Sam Francisco County entitled, *Carol*

23   *Moorhouse and James Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc., et*

24   *al.*, having been assigned Case No. CGC-08-472878 (San Francisco Super. Ct.

25   March 4, 2008)  The Complaint asserts claims for (1) Strict Liability: Failure to

26   Warn (All Defendants); (2) Negligence (All Defendants); (3) Fraud:

27   Misrepresentation (Manufacturing Defendants); (4) Fraud: Concealment,

28   Suppression or Omission of Material Facts (Manufacturing Defendants); and (5)

Negligent Misrepresentation (Manufacturing Defendants); (6) Violations of Consumer Legal Remedies Act (All Defendants); and (7) Loss of Consortium (All Defendants).     (See Plaintiffs' Complaint, attached hereto as Exhibit "A.") Plaintiffs generally allege that Carol Moorhouse contracted nephrogenic systemic fibrosis ("NSF") as a result of exposure to gadolinium-based contrast agents manufactured by one or more of the named defendants. (See Complaint at ¶¶ 41 through 60.)

    3.    <u>Pleading and Process</u>

As required by 28 U.S.C. § 1446(a), attached are copies of all state court process, pleadings and orders served upon the GE Defendants in the removed case. (See Exhibit "A.")

    4.    <u>The Removal is Timely</u>

The GE Defendants are informed and believe that the first date upon which any named defendant was served with a copy of said Complaint in the removed case was March 6, 2008, when the Defendants were served with a copy of the Summons and Complaint through their registered agent for service of process, CT Corporation System. (See Service of Process Transmittal, attached as Exhibit "A.") Accordingly, this Notice of Removal is filed within 30 days of service upon any defendant and, therefore, is timely under 28 U.S.C. § 1446(b).   (See *United Computer Sys. v. AT&T Corp.*, 298 F3d 756, 762 (9th Cir. 2002).)

    5.    <u>Basis for Removal – Diversity Jurisdiction</u>

This is a civil action that falls within the Court's original jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship), and is one which may be removed to this Court by the GE Defendants pursuant to the provisions of 28 U.S.C. § 1441 in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

    6.    <u>Amount in Controversy</u>

    a.    The amount in controversy for this matter exceeds $75,000,

1  exclusive of interest and costs. (See 28 U.S.C. § 1332.) California law prohibits
2  Plaintiffs from stating in their Complaint the amount of damages claimed. (See
3  Cal. Code of Civil Procedure § 425.10 (b) (specific amount of damages in personal
4  injury or wrongful death action may not be stated in complaint).) Nevertheless,
5  removal is proper because a fair reading of the Complaint shows that the amount in
6  controversy requirement has been met. (See *Kenneth Rothchild Trust v. Morgan*
7  *Stanley Dean Witter*, 199 F.Supp.2d 993 (C.D. Cal. 2002).)

8        b.    Where a plaintiff's complaint does not specify the amount of
9  damages being sought, whether or not the amount in controversy exceeds
10 jurisdictional limits, can be ascertained from the complaint. (See *Singer v. State*
11 *Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). This burden can easily
12 be met if it is facially apparent from the allegations in the complaint that the
13 plaintiff's claims exceed $75,000.00. (See *Kenneth Rothchild Trust v. Morgan*
14 *Stanley Dean Witter*, 199 F.Supp.2d at 998; see also *Campbell v. State Farm Mut.*
15 *Auto Ins. Co.*, No. CV87-7759 JMI (GHKx), 1988 U.S. Dist. LEXIS 19496, 2-3
16 (C.D. Cal. 1988) ("For removal purposes, the amount in controversy is to be
17 determined by the allegations in the complaint or where they are not dispositive, by
18 allegations in the petition for removal"); *Davenport v. Procter & Gamble Mfg. Co.*,
19 241 F2d 511 (2nd Cir. 1957).)

20       c.    Plaintiffs allege that Mrs. Moorhouse has contracted NSF as a
21 result of exposure to gadolinium-based contrast agents. (See Complaint at ¶ 1.)
22 Plaintiffs also allege that NSF is "a progressive disease for which there is no known
23 cure" which causes "thickening, tightening and swelling of the skin" and can cause
24 progress to "a fibrotic or scarring condition of other body organs" (Complaint at
25 ¶ 42.) As a result, Plaintiffs allege that Mrs. Moorhouse has sustained physical
26 injuries from the effects of NSF, as well as pain, suffering and emotional distress.
27 (See Complaint at Prayer No. 2.) For these alleged injuries, Plaintiffs seek special
28 and general damages for past and future medical expenses, lost income, emotional

1   distress, loss of enjoyment of life and loss of consortium. (See Complaint at Prayer

2   Nos. 2 and 3.) Plaintiffs also seek punitive damages because they claim that the

3   Defendants' conduct was "vile, base, willful, malicious, wanton, oppressive and

4   fraudulent." (Complaint at ¶ 73.)

5            d.     Based on these allegations, the alleged damages involved, and

6   on the experience of the undersigned counsel and Defendants in pharma-products

7   liability and products cases, the amount in controversy exceeds the sum of

8   $75,000.00. (See *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883-884 (5th Cir.

9   2000) (damages in slip-and-fall case for "medical expenses, physical pain and

10   suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and

11   earning capacity, and permanent disability and disfigurement" met the jurisdictional

12   threshold); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)

13   (removal proper where it is facially apparent that amount in controversy exceeds

14   $75,000); *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir.

15   1992) (punitive damages are properly considered in calculating the amount in

16   controversy).

17            e.     A fair reading of these allegations reveals that the alleged

18   damages involved are substantial and exceed $75,000.00, exclusive of interest and

19   costs, and that this case meets the jurisdictional requirement.

20            7.    <u>Citizenship of the Parties</u>

21         The requisite complete diversity of citizenship exists between Plaintiffs and

22   all properly named and served Defendants. (See 28 U.S.C. §1332.)

23            a.     The GE Defendants are informed and believe that Plaintiffs are

24   now and were at the time of filing of the Complaint residents of the state of

25   California. (See Complaint at ¶ 1.) Plaintiffs are therefore California citizens for

26   purposes of federal diversity jurisdiction. (See 28 U.S.C. § 1332(a); *Kanter v.*

27   *Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

28   ///

1    b.    The GE Defendants are informed and believe that Bayer
2   HealthCare Pharmaceuticals, Inc. (Manufacturing Defendant) is a Delaware
3   business entity with its principal place of business in New Jersey. (See Complaint
4   at ¶ 5.) Bayer HealthCare Pharmaceuticals, Inc. was a citizen of the States of
5   Delaware and New Jersey at the time of the filing of the Complaint for purposes of
6   federal diversity jurisdiction (See Exhibit "B," Defendants Bayer Pharmaceuticals
7   Inc. and Bayer Healthcare LLC's Consent to Removal of Action.)

8    c.    The GE Defendants are informed and believe that Bayer
9   Healthcare LLC (Manufacturing Defendants) is now and was a Delaware business
10  entity with its principal place of business in New York. (See Complaint ¶ 3.) Bayer
11  Healthcare LLC was a citizen of the States of Delaware and New York at the time
12  of the filing of the Complaint for purposes of federal diversity jurisdiction. (See
13  Exhibit "B," Defendants Bayer Pharmaceuticals Inc. and Bayer Healthcare LLC's
14  Consent to Removal of Action.)

15    d.    General Electric Company (Manufacturing Defendant) is now
16  and was a New York business entity with its principal place of business in the State
17  of Connecticut. (See Complaint at ¶ 9.) General Electric Company was a citizen of
18  the States of New York and Connecticut at the time of the filing of the Complaint
19  for purposes of federal diversity jurisdiction.

20    e.    GE Healthcare Inc. (Manufacturing Defendant) is now and was
21  a Delaware corporation with its principal place of business in the State of New
22  Jersey. (See Complaint at ¶ 11.) GE Healthcare Inc. was a citizen of the States of
23  Delaware and New Jersey at the time of the filing of the Complaint for purposes of
24  federal diversity jurisdiction.

25    f.    The GE Defendants are informed and believe that Defendant
26  Mallinckrodt Inc. (Manufacturing Defendant) is now and was a Delaware entity
27  with its principal place of business in Missouri (See Complaint at ¶ 17.)
28  Mallinckrodt Inc. was a citizen of the States of Delaware and Missouri at the time

1    of the filing of the Complaint for purposes of federal diversity jurisdiction. (See

2    Exhibit "C," Declaration of Thomas A. Woods at ¶ 4.)

3          g.     The GE Defendants are informed and believe that Defendant

4    Covidien Inc. (Manufacturing Defendant) is now and was a Delaware corporation

5    with its principal place of business in New Hampshire. (See Complaint at ¶ 14.)

6    Covidien Inc. is neither incorporated in, nor maintains its principal place of

7    business in California. (See Exhibit "C," Woods Decl. at ¶ 3.)

8          h.     The GE Defendants are informed and believe that Defendant

9    Bracco Diagnostics, Inc. (Manufacturing Defendant) is now and was a Delaware

10   entity with its principal place of business in New Jersey. (See Complaint at ¶ 21.)

11   Bracco Diagnostics, Inc. was a citizen of the States of Delaware and New Jersey at

12   the time of the filing of the Complaint for purposes of federal diversity jurisdiction.

13   (See Exhibit "D," Declaration of Aggie Lee at ¶ 4.)

14         i.     The GE Defendants are informed and believe that McKesson

15   Corporation (Distributing and Nominal Defendant) is now and was a Delaware

16   corporation with its principal place of business in the State of California. (See

17   Complaint at ¶ 30.) McKesson, however, is fraudulently joined, and therefore, its

18   citizenship is disregarded for purposes of determining federal diversity jurisdiction.

19   (See *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).) (See

20   Paragraphs 9(a) through 9(k), *infra*.)

21         j.     The GE Defendants are informed and believe that Defendant

22   Merry X-Ray Chemical Corporation (Distributing and Nominal Defendant) is now

23   and was a California Corporation with its principal place of business in the State of

24   California. (See Complaint at ¶ 33.) Merry X-Ray, however, is fraudulently

25   joined, and therefore, its citizenship is disregarded for purposes of determining

26   federal diversity jurisdiction. (See *Morris v. Princess Cruises, Inc.*, 236 F.3d at

27   1067.) (See Paragraphs 9(a) through 9(k), *infra*.)

28   ///

8.    Fraudulent Joinder Standard for Non-Diverse Defendants

a.    In determining whether there is federal jurisdiction, a federal court normally will examine the plaintiff's case and not the defendant's pleadings. However, when considering whether there is a fraudulent joinder, the court "will go somewhat further" because "the defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." (*Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (internal citations omitted).) A federal court may disregard a non-diverse defendant for the purposes of determining diversity if that federal court determines that the non-diverse defendant's joinder is "fraudulent" or a "sham" because no cause of action has been stated against that defendant under state law. (See *Morris v. Princess Cruises, Inc.*, 236 F.3d at 1067.)

b.    Fraudulent joinder exists "when there is no possibility of recovery against a resident defendant 'according to the settled rules of the state'." (*TPS Utilicom Services, Inc.*, 223 F.Supp.2d 1089, 1102 (C.D. Cal. 2002).) While the test for fraudulent joinder resembles a Rule 12(b)(6) analysis in that the federal court accepts non-conclusory allegations as true, the Court's inquiry is broader than Rule 12(b)(6). (*Id.*)

c.    A defendant is fraudulently joined where there is no *reasonable basis in fact* for a claim against it. (See *Maffei v. Allstate Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (joinder was fraudulent where defendant had 'no real connection [to] the controversy' because the allegations against the defendant were 'without any reasonable basis in fact').)

9.    Fraudulent Joinder of Distributor Defendants

a.    The citizenship of distributor defendants McKesson and Merry X-Ray should be disregarded for the purposes of determining jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b), because there is no reasonable basis in fact

1   for establishing liability against the distributor defendants (and thus, the distributor

2   defendants were fraudulently joined.)  The presence of a sham or nominal party will

3   not defeat removal on diversity grounds.  (See *Strotek Corp. v. Air Transport*

4   *Assoc.*, 300 F.3d at 1131.)

5         b.    The Complaint fails to establish a factual nexus between the

6   Distributor Defendants and Mrs. Moorhouse's injuries.  In addition, none of the

7   claims musters a reasonable basis for liability.  Plaintiffs allege three causes of

8   action against the Distributor Defendants: (1) strict liability: failure to warn; (2)

9   negligence;  (3) CLRA violations and (4) loss of consortium.  However, "[i]f the

10   plaintiff[s] fail to state a cause of action against a resident defendant, and the failure

11   is obvious according to the settled rules of the state, the joinder of the resident

12   defendant is fraudulent." (*McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th

13   Cir. 1987).

14         c.    On the face of the Complaint, the liability if any, of the

15   Distributor Defendants is derivative of the claims against the Manufacturer

16   Defendants, and no reasonable basis exists for obtaining independent relief against

17   the Distributor Defendants.  Plaintiffs' claims are based entirely upon the alleged

18   knowledge and conduct of the Manufacturing Defendants.  Specially, it is alleged

19   that the *Manufacturing Defendants* "never tested the safety of their gadolinium-

20   based contrast agents in individuals with kidney impairment;" that "it was not until

21   September 2007 that *[Manufacturing Defendants] Bayer, GE, Bracco, and*

22   *Mallinckrodt* finally sent letters to healthcare providers warning them of the risk of

23   NSF to kidney impaired individuals who received MRIs using gadolinium-based

24   contrast agents" (emphasis supplied); and that had Mrs. Moorhouse and her

25   healthcare providers been warned about the risks associated with these agents, she

26   would not have been administered these agents and "would not have been afflicted

27   with NSF." (See Complaint at ¶¶ 46 and 56-57.)  Indeed, the gravamen of the

28   Complaint is the actions which occurred *prior to* sale and distribution of the

products at issue. "In *pre-clinical* studies during which gadolinium-based contrast agents were injected into laboratory animals, consistent pattern of toxicity including nephrogenic fibrotic changes in the kidneys and other body organs occurred." (Complaint at ¶ 48) (emphasis added). Since Merry X-Ray and McKesson are distributors, *a priori*, they could not have been involved in these products at any *pre-clinical* stage of product development.

    d.  The Complaint is devoid of any individualized or independent conduct for which the Distributor Defendants have been named in this action. (See Complaint, generally.) Instead, plaintiffs lump the Distributor Defendants with the Manufacturing Defendants -- i.e., "Defendants" knew or should have known that the use of gadolinium contrast agents created a risk of serious bodily injury and death in patients with impaired kidney function; that "Defendants" failed to warn Mrs. Moorhouse and her prescribing physicians about the serious health risk associated with gadolinium-based contrast agents; and that "Defendants" have repeatedly failed to advise consumers and/or their healthcare providers of the causal relationship between gadolinium-based contrast agents to individuals with impaired kidney function. (See Complaint at ¶¶ 52-53 and 55.)

    e.  Plaintiffs' failure to allege an independent basis for liability against the Distributor Defendants is not surprising because the Distributing Defendants' only function was to distribute gadolinium-based contrast agents to imaging facilities. (See Exhibit "E," Declaration of Greg Yonko, and Exhibit "F," Declaration of Larry Lawson.) Plaintiffs have not and cannot allege in their Complaint that the Distributor Defendants designed, manufactured, marketed or administered any gadolinium-based contrast agents. Plaintiffs have not and cannot allege in their Complaint that the Distributing Defendants designed, assembled or otherwise provided any of the packaging, labels or warnings for any gadolinium-based contrast agents.

///

f.    Indeed, Defendant Merry X Ray has never designed, manufactured, marketed or administered any of the Gadolinium-based contrast agent product lines. (See Lawson Decl. at ¶ 2.)  Merry X Ray is engaged in the business of distributing and selling various medical products, and specifically with respect to Gadolinium-based contrast agents, its role in the chain of distribution is, and has always been, to sell this product line to various imaging facilities in the same packaging in which it was received from the manufacturer.  (See Lawson Decl. at ¶¶ 2-3.)    Merry X Ray does not, and did not, design or assemble or otherwise provide any of the packaging, labels or warnings for this product line, and does not, and did not, design, test, manufacture, label or market any of this product line and has never distributed MRI or MRA machines. (See Lawson Decl. at ¶¶ 2-3.)

g.    Likewise, Defendant McKesson has never designed, manufactured, marketed or administered any of the gadolinium-based contrast agent product lines. (See Yonko Decl. at ¶¶ 2-3.)  McKesson is engaged in the business of distributing and selling various medical products, and specifically with respect to Gadolinium-based contrast agents, its role in the chain of distribution is, and has always been, to sell this product line to various imaging facilities in the same packaging in which it was received from the manufacturer.  (See Yonko Decl. at ¶¶ 2-3.)  McKesson does not, and did not, design or assemble or otherwise provide any of the packaging, labels or warnings for this product line, and does not, and did not, design, test, manufacture, label or market any of this product line, and has never distributed MRI or MRA machines. (See Yonko Decl. at ¶¶ 2-3.)

h.    Failure to allege a factual basis for asserting a claim against the Distributor Defendants renders them fraudulently joined.  (See *TPS Utilicom Servs, Inc. v. AT &T Corp.*, 223 F.Supp.2d at 1102-04) (holding that the plaintiff fraudulently joined two defendants when it failed to allege conduct of those "defendants that would satisfy the conduct element of either claim.")

1          i.    *Strict Liability: Failure to Warn*:  Plaintiffs maintain that the

2    Distributor Defendants are strictly liable for failure to warn  (See Complaint at ¶¶

3    66, 67.)  This claim fails because the Distributor Defendants had no duty to warn

4    Plaintiffs.  Although the general rule is that all parties in the chain of distribution

5    can be strictly liable for failure to warn claims, *Anderson v. Owens-Corning*

6    *Fiberglass Corp.*, 53 Cal.3d 987, 994 (1991), under California law, a distributor has

7    no duty to warn the ultimate consumer when there is no effective way to convey the

8    warning.  (See *Perssons v. Saloman N. Am., Inc.*, 217 Cal.App.3d 168, 178 (1990).)

9    Here, the Distributor Defendants could not communicate warnings to consumers

10   because, under Food and Drug Administration (FDA) regulations, the Distributor

11   Defendants would violate federal law if it altered or added to the Manufacturing

12   Defendants' warning labels.  (See 21 U.S.C.  §§ 331, 332 and 333.)  Because the

13   Distributor Defendants had no duty to warn Plaintiffs about any risks associated

14   with the gadolinium-based contrast agents, and indeed would violate federal law by

15   doing so, they cannot be found liable in strict liability for failure to warn.  (See

16   *Perssons*, 217 Cal.App.3d at 178.)  Indeed, there is no legal precedent in California

17   to support a finding  of liability for failure to warn against distributors in the

18   prescription drug context .

19          j.    *Negligence*:  Plaintiffs maintain that the Distributor Defendants

20   were negligent because they breached a duty to exercise reasonable care  in the

21   "design, formulation, testing, manufacture, labeling, marketing, sale and/or

22   distribution" of both  the contrast agents at issue and the MRI and MRA machines

23   designed to be used in conjunction therewith.  (See Complaint at ¶¶ 69-72.)  As

24   with their strict liability claim, the Distributor Defendants could not be liable under

25   any of these theories, because the Distributor Defendants did not design, test,

26   manufacture, label or market any of the products at issue and in addition, had no

27   role at all in the chain of distribution of the MRI and MRA machines themselves.

28   (See Lawson Decl. at ¶¶  2-3; see Yonko Decl. at ¶¶  2-3.  Thus, the Distributor

1   Defendants had no duty to the Plaintiffs for failure to do so with reasonable care.

2        k.   *Violations of the Consumer Legal Remedies Act:*   Plaintiffs

3   maintain that the Distributor Defendants are liable for violations of California

4   consumer protection statutes codified in Cal. Civil Code § 1750, et seq.

5   ("CLRA"). As with their strict liability claim, the Distributor Defendants could not

6   be liable under the CLRA because they did not label or market any of the products

7   at issue and because the CLRA does not apply to prescription drugs, medical

8   devices or other pharmaceutical products which are provided to the consumer

9   indirectly by way of prescription.

10        (1)   The CLRA has been in existence since 1970,[1] yet no

11   published decision has ever held that the CLRA is applicable to a prescription drug,

12   medical device or pharmaceutical product. The CLRA was enacted in response to

13   violence and rioting in the late 1960's and was designed to protect consumers from

14   the sale of goods by disreputable retailers who charged exorbitant prices or offered

15   inferior goods for sale, particularly to individuals in low-income areas or with lower

16   credit scores. (See *Berry v. American Exp. Publishing, Inc.* (2007) 147 Cal.App.4[th]

17   224, 230.)

18        (2)   By definition, the CLRA does not apply to the products at

19   issue in this case. The CLRA enumerates all of the "proscribed practices" for

20   which a violation can be found. The list is exhaustive and applies only to practices

21   undertaken in connection with "the sale or lease of goods or services to any

22   consumer." (See Cal. Civil Code § 1770(a).) "Goods" is defined as "tangible

23   chattels bought or leased for use primarily for personal, family, or household

24   purposes . . . ." (See Cal. Civil Code § 1761(a).) The Gadolinium-based contrast

25   agents at issue in this case are not "goods" as that term is defined and were not sold

26   directly to the Plaintiffs. Moreover, there is no allegation that the Distributor

27   Defendants contracted with the Plaintiffs for any provision of services under the

28   _____
[1] See Cal. Civil Code § 1750.

1    CLRA. Thus, no CLRA cause of action lies against the Distributor Defendants.

2                    (3)    The reported California decisions illustrate the differences

3    between consumer products to which the CLRA applies and the pharmaceutical

4    agents at issue here.  (See *Cattie v. Wal-mart Stores, Inc.*, 504 F.Supp.2d 939 (S.D.

5    Cal. 2007) (deceptive advertising claim for on-line sale of bed linens to consumers);

6    *Laster v. T-Mobile USA, Inc.* (deceptive advertising claim for sale of cell phones to

7    consumers; *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30

8    (concealment claim for sale of off-road vehicle to consumers); *Farm Raised Salmon*

9    *Cases* (2008) 42 Cal.4[th] 1077 (artificial coloring of salmon sold by grocery store to

10   consumers); and *Von Grabe v. Spring PCS*, 312 F.Supp.2d 1285 (S.D. Cal. 2003)

11   (deceptive business practices claim arising out of sale of cell phone and charger to

12   consumer).)

13                   (4)    Plaintiffs' CLRA claims are also jurisdictionally barred

14   due to violation of the statutory notice requirements.  Plaintiffs' failure to comply

15   with the notice provisions requires dismissal of the cause of action with prejudice.

16   (See *Laster v. T-Mobile USA, Inc.*, 407 F.Supp.2d at 1195-96; *Von Grabe v. Spring*

17   *PCS*, 312 F.Supp.2d at 1304; *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939.)

18   Section 1782 of the Cal. Civil Code mandates that 30 days before commencing an

19   action for damages, the plaintiff must "[n]otify the person alleged to have employed

20   or committed methods, acts, or practices declared unlawful by Section 1770 of the

21   particular alleged violations of 1770." (Cal. Civil Code § 1782 (a)(1).)  The notice

22   provisions of the CLRA are jurisdictional and must be applied literally.  (See

23   *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30.)  Plaintiffs'

24   Complaint seeks both injunctive relief and damages, including restitution and

25   attorneys' fees, and thus, the notice requirements of the CLRA apply.  (See

26   Complaint at ¶ 98.)

27   ///

28   ///

1    1.    *Loss of Consortium Claim*

Under California law, a claim for loss of consortium is deemed to be derivative of all other claims asserted in the case. (See *Rodriquez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382.)   Thus, despite a loss of consortium claim's independent existence, entitlement to recover is based on the injured plaintiff's right to recover. Accordingly, the Seventh Cause of Action for loss of consortium fails for all the reasons sets forth above.  Since there is no viable cause of action for strict liability, negligence or CLRA against the Distributor Defendants, there is no viable cause of action for loss of consortium against the Distributor Defendants either.

10.    Consent and Joinder of Defendants

All properly served defendants have consented to this removal, and have joined by signing this notice of removal. (See Exhibits B, C and D.)  Defendants are not required to gain the consent of any defendants who have not been properly named or served.  (See *Salveson v. W. States Bankcard Ass'n,* 731 F.2d 1423, 1429 (9th Cir. 1984) (holding that the Ninth Circuit rule is that "a party not served need not be joined" in a notice of removal); see also *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193 (9th Cir. 1988).)  In the event that such service has occurred, no consent is required.  Fraudulently joined parties need not join in or consent to a notice of removal.  (See *United Computer Sys. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).)

11.    Notice Given

Pursuant to 28 U.S.C. § 1446(d), Defendants are filing this Notice of Removal concurrently with the State Court in which the action is currently pending. In addition, Notice of Filing Notice of Removal was served concurrently on Plaintiffs' counsel.

///

///

12.    Venue

The United States District Court of the Northern District of California, San Francisco, embraces the county in which the State Court action is now pending and, therefore, this Court is a proper venue for this action. 28 U.S.C. §§ 84(c)(1), 1441(a).

13.    Additional Discovery, Briefing, and Argument

If any question arises as to the propriety of this removal, the GE Defendants request the opportunity to conduct discovery or brief any disputed issues and to present oral argument in support of their position that this case is properly removable.

14.    Non-Waiver of Defenses

Nothing in this Notice of Removal or related documents shall be interpreted as a waiver or relinquishment of Defendants' right to assert any defense or affirmative matter in this proceeding.

15.    Conclusion

Accordingly, the GE Defendants respectfully requests that this action now pending against Defendants in the Los Angeles County Superior Court, be removed to this Court and that this action be placed upon the docket of this Court for further proceedings as though originally instituted in this Court.

Dated:   April 4, 2008                    KUTAK ROCK LLP


By: _____
    Deborah C. Prosser
    Stephanie A. Hingle
    Attorneys for Defendants
    GENERAL ELECTRIC COMPANY
    and GE HEALTHCARE INC.

# EXHIBIT "A"

I M A G E D

MAR - 5 2008

SUMMONS ISSUED

F I L E D

AUG - 8 2008 -9⁰⁰ AM

DEPARTMENT 212

1  Lawrence J. Gornick (SBN 136290)
2  Debra DeCarli (SBN 237642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36ᵗʰ Floor
   San Francisco, CA 94104   CASE MANAGEMENT CONFERENCE SET
   Telephone: (415) 646-7160
4  Fax: (415) 981-1270
5  lgornick@lske-law.com
   ddecarli@lske-law.com
6  Attorneys for Plaintiffs

7           SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION

8                          COUNTY OF SAN FRANCISCO

9  CAROL MOORHOUSE and JAMES          Case No: CGC-08-472978
   MOORHOUSE,
10
                                      COMPLAINT FOR DAMAGES DUE TO:
11          Plaintiffs,
                                      1) STRICT LIABILITY: FAILURE TO
12       vs.                             WARN (All Defendants);
                                      2) NEGLIGENCE (All Defendants);
13  BAYER HEALTHCARE                  3) FRAUD: MISREPRESENTATION
    PHARMACEUTICALS, INC.; BAYER         (Manufacturing Defendants);
14  HEALTHCARE LLC; GENERAL ELECTRIC  4) FRAUD: CONCEALMENT,
    COMPANY; GE HEALTHCARE, INC.;        SUPPRESSION OR OMISSION OF
15  COVIDIEN, INC.; MALLINCKRODT, INC.;   MATERIAL FACTS (Manufacturing
    BRACCO DIAGNOSTICS, INC.; McKESSON    Defendants);
16  CORPORATION; MERRY X-RAY CHEMICAL  5) NEGLIGENT MISREPRESENTATION
    CORP.; and DOES 1 through 35         (Manufacturing Defendants);
17                                    6) VIOLATION OF CONSUMER LEGAL
            Defendants.                  REMEDIES ACT (All Defendants); and
18                                    7) LOSS OF CONSORTIUM (All
                                         Defendants)
19      Plaintiffs, Carol Moorhouse and James Moorhouse, (hereinafter "Plaintiffs") allege as follows:

20                                    PARTIES

21      *Plaintiffs*

22      1.    Carol Moorhouse ("Mrs. Moorhouse") and her husband, James Moorhouse ("Mr.

23  Moorhouse"), are residents of the State of California. Mrs. Moorhouse has nephrogenic systemic fibrosis

24  ("NSF"). NSF is an incurable, painful and deadly disease. Mrs. Moorhouse contracted NSF as a result of

25  receiving MRIs and MRAs using intravenous injections of gadolinium-based contrast agents.

26      *Manufacturing Defendants*

27      2.    Defendants Bayer HealthCare Pharmaceuticals, Inc. and Bayer HealthCare LLC (jointly

28  referred to as "Bayer") manufacture, market and sell Magnevist, a gadolinium-based contrast agent that, on

COMPLAINT FOR DAMAGES AND JURY DEMAND

BY FAX

1  information and belief, was injected into Plaintiff.

2      3.      Defendant Bayer HealthCare LLC, a division of Bayer AG, is a Delaware business entity

3  with its principal place of business in New York.

4      4.      Bayer HealthCare LLC is duly authorized to conduct business in the State of California and

5  does business in San Francisco County.

6      5.      Defendant Bayer HealthCare Pharmaceuticals, Inc. is a Delaware business entity with its

7  principal place of business in New Jersey.  Defendant Bayer HealthCare Pharmaceuticals, Inc. is the U.S.-

8  based pharmaceuticals unit of Bayer Healthcare LLC.

9      6.      Bayer HealthCare Pharmaceuticals, Inc. is duly authorized to conduct business in the State

10  of California and does business in San Francisco County.

11      7.      At all times relevant to this complaint, Bayer advertised, promoted, and sold Magnevist in

12  San Francisco County.

13      8.      Defendants General Electric Company and GE Healthcare, Inc. (jointly referred to as

14  "GE") manufacture and sell Omniscan, a gadolinium-based contrast agent that, on information and belief,

15  was injected into Mrs. Moorhouse.

16      9.      Defendant General Electric Company is a New York business entity with its principal place

17  of business in Connecticut.

18      10.     General Electric Company is duly authorized to conduct business in the State of California

19  and does business in San Francisco County.

20      11.     Defendant GE Healthcare, Inc. is a Delaware corporation with its principal place of

21  business in New Jersey.

22      12.     GE Healthcare, Inc. is duly authorized to conduct business in the State of California and

23  does business in San Francisco County.

24      13.     At all times relevant to this complaint, GE advertised, promoted, and sold Omniscan and its

25  MRI and MRA machines in San Francisco County.

26      14.     Defendants Covidien, Inc. and Mallinckrodt, Inc. (jointly referred to as "Covidien")

27  manufacture, distribute and sell OptiMARK, a gadolinium-based contrast agent that, on information and

28  belief, was injected into Mrs. Moorhouse.

- 2 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

15.     Defendant Covidien, Inc. is a Delaware corporation with its principal place of business in New Hampshire.

16.     Covidien, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

17.     Defendant Mallinckrodt, Inc. is a Delaware corporation with its principal place of business in Missouri. Mallinckrodt is a business unit of Covidien, Inc.

18.     Mallinckrodt, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

19.     At all times relevant to this complaint, Covidien advertised, promoted, and sold OptiMARK in San Francisco County.

20.     Defendant Bracco Diagnostics, Inc. ("Bracco") manufactures, sells and distributes MultiHance and ProHance, gadolinium-based contrast agents that, on information and belief, were injected into Mrs. Moorhouse.

21.     Bracco Diagnostics, Inc. is a Delaware corporation with its principal place of business in New Jersey.

22.     Bracco Diagnostics, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

23.     At all times relevant to this complaint, Bracco advertised, promoted, and sold MultiHance and ProHance in San Francisco County.

24.     The true names and capacities of those Defendants designated as Does 1-15 are unknown to Plaintiffs. Plaintiffs allege on information and belief that Does 1-15 manufactured gadolinium-based contrast agents that were injected into Mrs. Moorhouse and/or manufactured MRI and MRA machines with which MRIs and/or MRAs were performed on Mrs. Moorhouse using gadolinium-based contrast agents. Plaintiffs allege on information and belief that each of these fictitiously named defendants bears legal responsibility for the events and damages set forth in this complaint.

25.     Plaintiffs allege on information and belief that Does 1-15 were and are companies authorized to do and doing business in the State of California and have regularly conducted business in the County of San Francisco, State of California.

26.     Plaintiffs will amend this Complaint to show the identity of each fictitiously named

Defendant when they have been ascertained.

27.     The Bayer, GE, Covidien and Bracco Defendants, along with Does 1-15, are collectively

referred to as the Manufacturing Defendants.

*Distributor Defendants*

28.     Defendant McKesson Corporation distributes Omniscan and, on information and belief,

other gadolinium-based contrast agents. Plaintiffs allege on information and belief that McKesson

distributed the Omniscan and/or other gadolinium-based contrast agents that were injected into Mrs.

Moorhouse.

29.     Defendant McKesson Corporation is a Delaware corporation with its principal place of

business at One Post Street, San Francisco, California.

30.     McKesson Corporation is duly authorized to conduct business in the State of California and

does business in San Francisco County.

31.     At all times relevant to this complaint, on information and belief, McKesson sold Omniscan

and/or other gadolinium-based contrast agents in San Francisco County.

32.     Defendant Merry X-Ray Chemical Corporation distributes Magnevist and/or other

gadolinium-based contrast agents. Plaintiffs allege on information and belief that Merry X-Ray distributed

the Magnevist and/or other gadolinium-based contrast agents that were injected into Mrs. Moorhouse.

33.     Defendant Merry X-Ray Chemical Corporation is a California corporation with its

principal place of business at 4444 Viewridge Avenue, San Diego, California.

34.     Merry X-Ray Chemical Corporation is duly authorized to conduct business in the State of

California and does business in San Francisco County.

35.     At all times relevant to this complaint, Merry X-Ray sold Magnevist and/or other

gadolinium-based contrast agents in San Francisco County.

36.     The true names and capacities of those Defendants designated as Does 16-35 are unknown

to Plaintiffs. Plaintiffs allege on information and belief that Does 16-35 distributed gadolinium-based

contrast agents that were injected into Plaintiff Carol Moorhouse. Plaintiffs allege on information and

belief that each of these fictitiously named Defendants bears legal responsibility for the events and

- 4 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1    damages set forth in this Complaint.

2        37.    Plaintiffs allege on information and belief that Does 16-35 were and are companies

3    authorized to do and doing business in the State of California and have regularly conducted business in the

4    County of San Francisco, State of California.

5        38.    Plaintiffs will amend this Complaint to show the identity of each fictitiously named

6    defendant when they have been ascertained.

7        39.    McKesson and Merry X-Ray, along with Does 16-35, are collectively referred to as the

8    Distributor Defendants.

9        40.    The Manufacturing Defendants and the Distributor Defendants are collectively referred to

10   as Defendants.

11                                              FACTS

12       41.    Mrs. Moorhouse was diagnosed with NSF in or around May of 2007.

13       42.    NSF is predominantly characterized by discoloration, thickening, tightening, and swelling

14   of the skin after receiving a gadolinium-based contrast agent injection. These fibrotic and edematous

15   changes produce muscular weakness and inhibit flexion and extension of joints, resulting in contractures.

16   NSF often progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and other joints.

17   The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are

18   accompanied by burning, itching, or severe pain in the areas of involvement. NSF also progresses to a

19   fibrotic or scarring condition of other body organs such as the lungs, heart, liver, and musculature, and that

20   can inhibit their ability to function properly and may lead to death. NSF is a progressive disease for which

21   there is no known cure.

22       43.    NSF is a man-made disease. It only occurs in patients who have received a gadolinium-

23   based contrast agent for an MRI or an MRA.

24       44.    Gadolinium is a highly toxic heavy metal. It does not occur naturally in the human body.

25   The only known route for gadolinium to enter the human body is injection of a gadolinium-based contrast

26   agent.

27       45.    Because gadolinium is toxic, it has to be coated to keep it from coming in contact with

28   human tissue when used in connection with MRIs or MRAs. This coating process is called chelation.

- 5 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

46.     Gadolinium is eliminated from the body by the kidneys. Gadolinium-based contrast agents are not safe if the chelate separates from the gadolinium, which is what happens over time if kidneys are not functioning properly. Individuals with impaired kidney function risk dechelation and cannot efficiently or quickly eliminate gadolinium from their bodies. The Manufacturing Defendants never tested the safety of their gadolinium-based contrast agents in individuals with kidney impairment.

47.     On information and belief, the gadolinium-based contrast agents injected into Mrs. Moorhouse were manufactured by the Manufacturing Defendants and distributed by the Distributor Defendants.

48.     In pre-clinical studies during which gadolinium-based contrast agents were injected into laboratory animals, consistent patterns of toxicity including nephrogenic fibrotic changes in the kidneys and other body organs occurred.

49.     During the years that Defendants have manufactured, marketed, distributed, sold and administered gadolinium-based contrast agents, there have been numerous case reports, studies, assessments, papers, and other clinical data that have described and/or demonstrated NSF in connection with the use of gadolinium-based contrast agents.

50.     Mrs. Moorhouse received MRIs and/or MRAs utilizing gadolinium-based contrast agents.

51.     Mrs. Moorhouse had impaired kidney function at the time she received her first injection of gadolinium-based contrast agent and continued to have impaired kidney function at the time she received each subsequent injection of gadolinium-based contrast agent.

52.     During the time period when Mrs. Moorhouse received injections of the Manufacturing Defendants' gadolinium-based contrast agents, Defendants knew or should have known that the use of gadolinium-based contrast agents created a risk of serious bodily injury and death in patients with impaired kidney function.

53.     Defendants failed to warn Mrs. Moorhouse and her healthcare providers about the serious health risks associated with gadolinium-based contrast agents, and failed to disclose the fact that there were safer alternatives.

54.     As a direct and proximate result of receiving injections of gadolinium-based contrast agents manufactured, distributed, sold and/or administered by Defendants, Mrs. Moorhouse developed NSF.

55.    Defendants have repeatedly and consistently failed to advise consumers and/or their healthcare providers of the causal relationship between gadolinium-based contrast agents and NSF in patients with renal insufficiency. Defendants knew or should have known of the risk of NSF posed by gadolinium-based contrast agents to individuals with impaired kidney function years before they finally issued warnings.

56.    It was not until September 2007 that Bayer, GE, Bracco and Mallinckrodt finally sent letters to healthcare providers warning them of the risk of NSF to kidney impaired individuals who received MRIs using gadolinium-based contrast agents.

57.    Had Mrs. Moorhouse and/or her healthcare providers been warned about the risks associated with gadolinium-based contrast agents, she would not have been administered gadolinium-based contrast agents and would not have been afflicted with NSF.

58.    As a direct and proximate result of Mrs. Moorhouse being administered gadolinium-based contrast agents, she has suffered severe physical injury and pain and suffering, including, but not limited to, the effects of NSF. Mrs. Moorhouse's physical injuries and pain and suffering will inevitably worsen over time and will in all likelihood lead to death.

59.    As a direct and proximate result of being administered gadolinium-based contrast agents, Plaintiffs suffered and continue to suffer significant mental anguish and emotional distress and will continue to suffer significant mental anguish and emotional distress in the future.

60.    As a direct and proximate result of being administered gadolinium-based contrast agents, Plaintiffs have also incurred medical expenses and other economic damages and will continue to incur such expenses in the future.

## DISCOVERY RULE & FRAUDULENT CONCEALMENT

61.    The discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against all Defendants. The nature of Plaintiffs' injuries and damages, and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and MRAs, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiffs, until a time less than two years before the filing of this Complaint. Therefore, under appropriate

- 7 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  application of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations

2  period.

3      62.    Defendants are estopped from asserting a statute of limitations defense because all

4  Defendants fraudulently concealed from Plaintiffs the nature of Plaintiffs' injury and the connection

5  between the injury and all Defendants' tortious conduct.

6                    FIRST CAUSE OF ACTION

7                    (Against All Defendants)

8              STRICT LIABILITY: FAILURE TO WARN

9      63.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

10     64.    Defendants' gadolinium-based contrast agents, and MRI and MRA machines designed to

11 be used in conjunction with gadolinium-based contrast agents, were defective due to inadequate warnings

12 or instruction for use, both prior to marketing and post-marketing.  Defendants knew or should have known

13 that their products created significant risks of serious bodily harm and death to consumers.  Defendants

14 failed to adequately warn consumers and their healthcare providers of such risks.

15     65.    Because of Defendants' failure to provide adequate warnings with their products, Mrs.

16 Moorhouse was injected with gadolinium-based contrast agents which the Defendants manufactured,

17 designed, sold, supplied, marketed or otherwise introduced into the stream of commerce.  Those

18 gadolinium-based contrast agents are the legal cause of Mrs. Moorhouse's serious physical injuries, harm,

19 damages and economic loss. Mrs. Moorhouse will continue to suffer such harm, damages and economic

20 loss in the future.

21                    SECOND CAUSE OF ACTION

22                    (Against All Defendants)

23                          NEGLIGENCE

24     66.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

25     67.    Defendants had a duty to exercise reasonable care in the design, formulation, testing,

26 manufacture, labeling, marketing, sale and/or distribution of gadolinium-based contrast agents and the MRI

27 and MRA machines designed to be used in conjunction with gadolinium-based contrast agents.  In

28 particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily harm

- 8 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

1  and adverse events.

2      68.     Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale,

3  testing, marketing, or distribution of gadolinium-based contrast agents and the MRI and MRA machines

4  designed to be used in conjunction with gadolinium-based contrast agents in that they knew or should have

5  known that the products could cause significant bodily harm or death and were not safe for use by certain

6  types of consumers.

7      69.     Defendants failed to exercise ordinary care in the labeling of gadolinium-based contrast

8  agents and the labeling of MRI and MRA machines designed to be used in conjunction with gadolinium-

9  based contrast agents and failed to issue to consumers and their health care providers adequate warnings

10  concerning the risks of serious bodily injury or death due to the use of gadolinium-based contrast agents

11  and the MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast

12  agents.

13      70.     Despite the fact that Defendants knew or should have known that gadolinium-based

14  contrast agents and the MRI and MRA machines designed to be used in conjunction with gadolinium-

15  based contrast agents posed a serious risk of bodily harm to consumers, Manufacturing and Distributor

16  Defendants unreasonably continued to manufacture and market gadolinium-based contrast agents and the

17  MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast agents for

18  administration to MRI and MRA patients with renal insufficiency and failed to exercise reasonable care

19  with respect to post-sale warnings and instructions for safe use.

20      71.     At all relevant times, it was foreseeable to Defendants that consumers like Mrs. Moorhouse

21  would suffer injury as a result of their failure to exercise ordinary care as described above.

22      72.     As a direct and proximate result of Defendants' negligence, Mrs. Moorhouse has suffered

23  physical injuries, harm, damages and economic loss and will continue to suffer such harm, damages and

24  economic loss in the future.

25      73.     The foregoing acts, conduct and omissions of Defendants were vile, base, willful,

26  malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the health,

27  safety and rights of Plaintiffs and other users of Defendants' products, and for the primary purpose of

28  increasing Defendants' profits. As such, Plaintiffs are entitled to exemplary damages.

- 9 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

### THIRD CAUSE OF ACTION

(Against Manufacturing Defendants)

### FRAUD

74.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

75.    Manufacturing Defendants knowingly and intentionally made materially false and misleading representations to Mrs. Moorhouse's healthcare providers and to the public, to the effect that gadolinium-based contrast agents were safe for use and that their labeling, marketing and promotional materials fully described all known risks associated with their product.

76.    Manufacturing Defendants' representations were in fact false.  Gadolinium-based contrast agents are not safe for use and Defendants' labeling, marketing and promotional materials did not fully describe all known risks of the products.

77.    Manufacturing Defendants had actual knowledge that gadolinium-based contrast agents created an unreasonable risk of serious bodily injury and death to consumers, especially patients with renal impairment.

78.    Manufacturing Defendants knowingly and intentionally omitted this information from their labeling, marketing, and promotional materials and instead, labeled, promoted and marketed their products as safe for use in order to increase and sustain sales.

79.    When Manufacturing Defendants made representations that gadolinium-based contrast agents were safe for use, they knowingly and intentionally concealed and withheld from Mrs. Moorhouse, her healthcare providers and the public, the fact that gadolinium-based contrast agents are not safe for use in consumers with renal insufficiency.

80.    Manufacturing Defendants had a duty to disclose that gadolinium-based contrast agents are not safe for use in patients with renal insufficiency.  Manufacturing Defendants had superior knowledge of these facts that were material to Mrs. Moorhouse and her healthcare providers' decisions to use gadolinium-based contrast agents.

81.    Mrs. Moorhouse and her healthcare providers reasonably and justifiably relied on the Manufacturing Defendants' representations that gadolinium-based contrast agents were safe for human use and that Manufacturing Defendants' labeling, marketing and promotional materials fully described all

- 10 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  known risks associated with the products.

2      82.    Mrs. Moorhouse did not know, and could not have learned of the facts that the Defendants

3  omitted and suppressed.  The facts suppressed and concealed by the Defendants are material.  Had Mrs.

4  Moorhouse and her healthcare providers known that gadolinium-based contrast agents are not safe for use

5  in patients with renal insufficiency, Mrs. Moorhouse would not have been injected with gadolinium-based

6  contrast agents.

7      83.    As a direct and proximate result of Manufacturing Defendants' misrepresentations and

8  concealment, Mrs. Moorhouse was administered gadolinium-based contrast agents and has suffered serious

9  physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and

10  economic loss in the future.

11     84.    The foregoing acts, conduct and omissions of Manufacturing Defendants were vile, base,

12  willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the

13  health, safety and rights of Mrs. Moorhouse and other users of Manufacturing Defendants' products, and

14  for the primary purpose of increasing Manufacturing Defendants' profits.  As such Plaintiffs are entitled

15  to exemplary damages.

16                    FOURTH CAUSE OF ACTION

17                 (Against Manufacturing Defendants)

18              FRAUD: CONCEALMENT, SUPPRESSION OR

19                 OMISSION OF MATERIAL FACTS

20

21     85.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

22     86.    Manufacturing Defendants omitted, suppressed, or concealed material facts concerning the

23  dangers and risk associated with the use of their gadolinium-based contrast agents, including but not

24  limited to the risks to patients with kidney impairment of developing NSF, and the fact that safer

25  alternatives were available.  Further, Manufacturing Defendants purposely downplayed and understated the

26  serious nature of the risks associated with use of their gadolinium-based contrast agents in order to increase

27  and sustain sales.

28     87.    As a direct and proximate result of Manufacturing Defendants' concealment of material

- 11 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1    facts, Mrs. Moorhouse was administered gadolinium-based contrast agents and has suffered physical

2    injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic

3    loss in the future.

4         88.    The foregoing acts, conduct and omissions of Manufacturing Defendants were vile, base,

5    willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the

6    health, safety and rights of Mrs. Moorhouse and other users of Manufacturing Defendants' products, and

7    for the primary purpose of increasing Manufacturing Defendants' profits. As such Plaintiffs are entitled to

8    exemplary damages.

9                              FIFTH CAUSE OF ACTION

10                          (Against Manufacturing Defendants)

11                          NEGLIGENT MISREPRESENTATION

12        89.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

13        90.    Manufacturing Defendants supplied the public and Mrs. Moorhouse's healthcare providers

14    with materially false and incomplete information with respect to the safety of their gadolinium-based

15    contrast agents.

16        91.    The false information supplied by Manufacturing Defendants was that gadolinium-based

17    contrast agents were safe.

18        92.    In supplying this false information, Manufacturing Defendants failed to exercise reasonable

19    care.

20        93.    The false information communicated by Defendants to Mrs. Moorhouse and her healthcare

21    providers was material and Mrs. Moorhouse justifiably relied in good faith on the information to her

22    detriment.

23        94.    As a direct and proximate result of Defendants' misrepresentations, Mrs. Moorhouse was

24    administered gadolinium-based contrast agents and has suffered physical injury, harm, damages and

25    economic loss and will continue to suffer such harm, damages and economic loss in the future.

26    ///   ///   ///   ///   ///

27      ///   ///   ///   ///

28    ///   ///   ///   ///   ///

- 12 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

SIXTH CAUSE OF ACTION

(Against All Defendants)

CONSUMER LEGAL REMEDIES ACT

95.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

96.    This Complaint is filed and these proceedings are instituted, pursuant to California Civil Code section 1750, *et seq*, commonly referred to as the Consumers Legal Remedies Act ("CLRA"), to obtain injunctive relief, restitution, any other relief this Court deems proper, and attorneys' fees from Defendants.

97.    Among others, Defendants' conduct is in violation of California Civil Code section 1770(5), 1770(7) and 1770(9). Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of California Civil Code section 1750, *et seq*, including but not limited to the following:

a.    Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs and other off-label uses by impliedly representing that such products are approved for use with MRAs and other off-label uses, when in fact there is no such approval;

b.    Representing that gadolinium-based contrast agents are safe and effective for all patients, including patients with kidney impairment, when in fact they are not;

c.    Representing that MRIs and MRAs using gadolinium-based contrast agents are safer or more effective than other imaging methods that do not require the use of gadolinium-based contrast agents when in fact they are not;

d.    Marketing, promoting or selling their products as safer or superior to other brands of gadolinium-based contrast agents;

e.    Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as inert or with words to that effect;

f.    Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs or other off-label uses by expressly or impliedly representing that they are safe for such use; and

- 13 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

g.   Remaining silent despite their knowledge of the growing body of evidence regarding the danger of NSF and doing so because the prospect of huge profits outweighed health and safety issues.

98.   Plaintiffs demand that Defendants immediately cease the illegal conduct alleged herein.

99.   The illegal conduct alleged herein is continuing and there is no indication that Defendants will refrain from such activity in the future.

100.   Plaintiffs are entitled to injunctive relief and any other relief this Court deems proper, and attorneys' fees from Defendants as a result of such acts or practices.

## SEVENTH CAUSE OF ACTION

### (Against all Defendants)

### LOSS OF CONSORTIUM

101.   James Moorhouse incorporates by reference and realleges each paragraph set forth above.

102.   Mr. Moorhouse is the husband of Mrs. Moorhouse.

103.   As a direct and proximate result of Defendants' conduct, Mr. Moorhouse has been deprived of his wife's love, society, companionship and services and has otherwise suffered loss, the extent of which will be more fully adduced at the trial of this matter.

WHEREFORE, Plaintiffs pray for relief as follows:

1.   For an injunction prohibiting Defendants from engaging in the following conduct which violates the CLRA:

a.   Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs and other off-label uses;

b.   Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as safe and effective for patients with kidney impairment;

c.   Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as by representing that MRIs and MRAs using gadolinium-based contrast agents are safer or more effective than other imaging methods that do not require the use of gadolinium-based contrast agents;

- 14 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

d.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance in any way which implies that those products are safer or superior to other brands of gadolinium-based contrast agents;

e.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as inert or with words to that effect.

2.    Compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, loss of consortium, and other non-economic damages in an amount to be determined at trial of this action;

3.    Past and future medical expenses, income, and other economic damages in an amount to be determined at trial of this action;

4.    Punitive damages in an amount to be determined at trial of this action;

5.    Pre- and post-judgment interest;

6.    Attorneys' fees, expenses, and costs; and

7.    Such further relief as this Court deems necessary, just, and proper.

Respectfully submitted this 4th day of March 2008.

LEVIN SIMES KAISER & GORNICK LLP

By: *Debra DeCarli*

Debra DeCarli, Esq.

- 15 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
03/07/2008
CT Log Number 513168602

TO:   Deb Missell
      GE Healthcare Inc
      101 Carnegie Center
      Princeton, NJ 08540-6231

RE:   **Process Served in California**

FOR:  GE Healthcare Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Carol Moorhouse and James Moorhouse, Pltfs. vs. Bayer Healthcare Pharmaceuticals, Inc., etc., et al. including GE Healthcare, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Affidavit, Complaint, Stipulation Form, Case Management Statement Form, Attachment(s) |
| **COURT/AGENCY:** | San Francisco County- San Francisco, Superior Court, CA<br>Case # CGC08472978 |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Magnevist - A gadolinium based agent |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/06/2008 at 14:45 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Lawrence J. Gornick<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street<br>Suite 3600<br>San Francisco, CA 94104 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Standard Overnight , 798391487840 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Nancy Flores<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Page 1 of 1 / WM

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

1    SEDGWICK, DETERT, MORAN & ARNOLD LLP
     CHARLES T. SHELDON  Bar No. 155598
2    E-mail: charles.sheldon@sdma.com
     MICHAEL L. FOX  Bar No. 173355
3    E-mail: michael.fox@sdma.com
     MARC BRAINICH  Bar No. 191034
4    E-mail: marc.brainich@sdma.com
     One Market Plaza
5    Steuart Tower, 8th Floor
     San Francisco, CA 94105
6    Telephone: (415) 781-7900
     Facsimile: (415) 781-2635
7
     WHEELER TRIGG KENNEDY LLP
8    GALEN D. BELLAMY  Bar No. 231792
     1801 California Street, Suite 3600
9    Denver, Colorado 80202
     E-mail: bellamy@wtklaw.com
10   Telephone: (303) 244-1800
     Facsimile: (303) 244-1879
11
12   Attorneys for Defendant
     McKESSON CORPORATION
13

*ENDORSED*
*F I L E D*
Superior Court of California
County of San Francisco

APR 0 3 2008

GORDON PARK-LI, Clerk
BY: CAROLYN BALISTRERI
Deputy Clerk

14          SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION

15                     COUNTY OF SAN FRANCISCO

16

17   CAROL MOORHOUSE and JAMES        CASE NO. CGC-08-472978
     MOORHOUSE,
18                                    ANSWER OF MCKESSON CORPORATION
            Plaintiffs,               AND DEMAND FOR JURY TRIAL
19
          v.
20                                    Complaint Filed:  03/05/08
     BAYER HEALTHCARE                 Trial Date:    None set
21   PHARMACEUTICALS, INC.; BAYER
     HEALTHCARE LLC; GENERAL
22   ELECTRIC COMPANY; GE
     HEALTHCARE, INC.; COVIDIEN, INC.;
23   MALLINCKRODT, INC; BRACCO
     DIAGNOSTICS, INC.; McKESSON
24   CORPORATION; MERRY X-RAY
     CHEMICAL CORP.; and DOES 1 through
25   35,
26          Defendants.
27

28

-1-
ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

1       Defendant McKESSON CORPORATION ("McKesson") answers Plaintiffs' Complaint

2   as follows:

3       Under the provisions of Code of Civil Procedure Section 431.30, McKesson denies each

4   and every allegation of said Complaint and denies that Plaintiffs sustained damages in the sum or

5   sums alleged, or in any other sum, or at all.

6       Further answering, and by way of additional defense, McKesson states as follows:

7                                   **DEFENSES**

8       1.      Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

9       2.      Plaintiffs' claims are barred in whole or in part by the applicable statutes of

10  limitations, statutes of repose, and/or by the doctrines of laches, estoppel, waiver, unclean hands,

11  or ratification.

12      3.      Adequate warnings were provided to Carol Moorhouse's physicians and other

13  medical providers; therefore, any claims by Plaintiffs for inadequate warnings are barred by the

14  doctrines of learned intermediary and/or sophisticated user.

15      4.      Plaintiffs' claims based on inadequate warning are barred even if adequate

16  warnings with respect to known or potential dangers or risks associated with the use of

17  Omniscan™ were not provided, which is denied, because physicians and other medical providers

18  prescribing Omniscan™ either knew or should have known of the potential or known dangers or

19  risks, and there is no duty to warn members of a profession against dangers known or which

20  should be known to members of the profession.

21      5.      Plaintiffs' claims are barred in whole or in part because the products, methods,

22  standards, and/or techniques used in manufacturing, designing, marketing, and/or labeling of the

23  products at issue complied with and/or were in conformity with the state of the art at the time

24  they were manufactured, designed, marketed, and/or labeled.

25      6.      Plaintiffs' claims are barred in whole or in part because the manufacture, labeling

26  and sale of Omniscan™ was and is controlled by federal law, and McKesson at all relevant times

27  complied with applicable statutes and with the requirements of the FDA.

SEDGWICK  28  / / / /

-2-
ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

7.    Plaintiffs' claims are barred in whole or in part to the extent Plaintiffs have released, settled, entered into an accord and satisfaction, or otherwise compromised their claims.

8.    Plaintiffs' claims are barred in whole or in part by Carol Moorhouse's assumption of the risk associated with the purchase and/or use of the product, and is imputed to plaintiff James Moorhouse.

9.    Plaintiffs' claims are barred in whole or in part by product misuse by Plaintiff Carol Moorhouse or her physician including, among other things, their failure to follow warnings and/or failure to follow instructions.

10.    Plaintiffs' claims under state law are barred by the doctrine of federal preemption.

11.    Plaintiffs' claims are barred in whole or in part by the deference given to the primary jurisdiction of the FDA over the subject pharmaceutical product at issue under applicable federal laws, rules, and regulations.

12.    Plaintiffs' claims are barred in whole or in part under the doctrine described in the Restatement (Second) of Torts § 402A cmt.k.

13.    Plaintiffs' claims are barred in whole or in part because the pharmaceutical product at issue provides net benefits for a class of patients within the meaning of Restatement (Third) of Torts:  Products Liability § 6 cmt.f.

14.    To the extent Plaintiffs' claims related to McKesson's advertising, marketing, public statements, lobbying or other activities are protected by the First Amendment to the United States Constitution and the California Constitution, such claims are barred.

15.    Plaintiffs failed to notify McKesson of any alleged breach of warranty within a reasonable time after they discovered or should have discovered any such alleged breach and are therefore barred from recovery on such claims.

16.    Any warranties made by McKesson to Plaintiffs were disclaimed.

17.    Any claim for breach of express warranty must fail because Plaintiffs failed to allege any representation about the product at issue giving rise to an express warranty.

18.    Any claim for breach of implied warranty fails because the product at issue was used for its ordinary purpose.

SEDGWICK
DETERT, MORAN & ARNOLD LLP

-3-
ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

1    19.    Any breach of warranty claims are barred because there is a lack of privity
2   between Plaintiffs and McKesson.

3    20.    McKesson specifically pleads all defenses under the Uniform Commercial Code
4   now existing or which may arise in the future.

5    21.    Plaintiffs' claims for breach of warranty, expressed or implied, are barred by the
6   applicable provisions of the California Commercial Code.

7    22.    Plaintiffs have failed to join all indispensable parties; as a result of this failure,
8   complete relief cannot be accorded to those already parties to this action and will result in
9   prejudice to McKesson

10    23.    Plaintiffs' claims and recovery are barred, reduced and/or limited pursuant to
11   applicable constitutional, statutory, and common law regarding limitations of awards and
12   recovery.

13    24.    Plaintiffs' claims are barred or reduced by the contributory and/or comparative
14   negligence, and/or contributory and/or comparative fault.

15    25.    Plaintiffs' damages, if any, were caused solely or partially by some third person or
16   third party for whom McKesson is not legally responsible.

17    26.    Plaintiffs' damages, if any, resulted from new and independent, unforeseeable,
18   superseding, or intervening causes unrelated to the conduct of McKesson, or the products at
19   issue.

20    27.    If McKesson provided any product alleged to have been defective, as alleged in
21   the Complaint, McKesson supplied and/or distributed such product by and through other
22   intermediaries, including plaintiffs' and/or other named and unnamed defendants, and did not
23   package, repackage, or label the product in any way, and provided all warnings regarding the
24   product to such intermediaries as they were received from the product manufacturer and/or other
25   up stream suppliers without any additions, deletions, or alterations of any kind to the warnings.

26    28.    Plaintiffs' damages, if any, were the result of pre-existing conditions unrelated to
27   any conduct of McKesson or the products at issue.

28   / / / /

SEDGWICK
DETERT, MORAN & ARNOLD LLP

-4-
ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

1    29.    Plaintiffs' damages, if any, were caused by changes and/or alterations to the

2    products at issue and were made by persons not within McKesson's control.

3    30.    McKesson's liability, if any, for non-economic loss is limited to its equitable

4    share, determined in accordance with the relative culpability of all persons or entities

5    contributing to Plaintiffs' total non-economic loss, if any, including those over whom Plaintiffs

6    could have obtained personal jurisdiction with due diligence.

7    31.    McKesson alleges that the provisions of California Civil Code § 1431.2 are

8    applicable to the Complaint and each cause of action therein.

9    32.    Plaintiffs' non-economic loss must be allocated in accordance with the provisions

10   of Cal. Civil Code § 1431.2 ("Proposition 51").

11   33.    Plaintiffs' damages, if any, must be reduced by any amount of damages legally

12   caused by Plaintiffs' own failure to mitigate such damages.

13   34.    Plaintiffs' damages, if any, are not recoverable because they are legally too

14   remote, indirect, and speculative.

15   35.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted for

16   punitive or exemplary damages.

17   36.    McKesson denies any conduct for which punitive or exemplary damages could or

18   should be awarded and denies that Plaintiffs have produced evidence sufficient to support or

19   sustain the imposition of punitive damages pursuant to the applicable standard(s) of proof.

20   37.    Plaintiffs' claims seeking punitive damages violate the substantive and procedural

21   aspects of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States

22   Constitution, the Equal Protection Clause, the Excessive Fines Clause, and the cognate

23   provisions of the California Constitution.

24   38.    Any award of punitive or exemplary damages is barred to the extent that it is

25   inconsistent with the standards and limitations set forth in *BMW of North American, Inc. v. Gore*,

26   517 U.S. 559, 134 L.Ed. 2d 809, 116 S.Ct. 1589 (1996); *State Farm Mutual Automobile*

27   *Insurance Co. v. Campbell*, 538 U.S. 408 (2003), and *Phillip Morris USA v. Williams*, 127 S.Ct.

28   1057 (2007).

SEDGWICK
DETERT, MORAN & ARNOLD LLP

-5-
ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

1    39.    No act or alleged omission of McKesson was vile, base, willful, malicious,

2  wanton, oppressive or fraudulent, or done with a conscious disregard for the health, safety and

3  rights of Plaintiffs and others, or with actual malice, fraud or oppression as defined in Cal. Civil

4  Code § 3294, and Plaintiffs' Complaint fails to state a claim upon which relief can be granted for

5  punitive or exemplary damages.    Plaintiffs' Complaint seeks damages in excess of those

6  permitted by law.    McKesson asserts any statutory or judicial protection from punitive or

7  exemplary damages that is available under the applicable law, and any award of punitive or

8  exemplary damages is barred.

9    40.    Any verdict or judgment that might be recovered by Plaintiffs must be reduced by

10  those amounts that have indemnified, or will in the future indemnify, Plaintiffs in whole or in

11  part for any past or future claimed economic loss from any collateral source such as insurance,

12  Social Security, workers' compensation, or employee benefit programs.

13    41.    Plaintiffs' claims are barred by applicable statutes of limitation, including but not

14  limited to Cal. Code of Civil Procedure former § 340, subd. 3, or in the alternative, Cal. Code of

15  Civil Procedure §§ 335.1, 340.5, 340.8 and/or 343.

16    42.    McKesson is not liable to Plaintiffs because it never manufactured, sold, or

17  administered any gadolinium-based contrast agent to the Plaintiffs.

18    43.    McKesson owed no duty to Plaintiffs, and in any event, violated no duty that it

19  may have owed to Plaintiffs.

20    44.    Any and all injuries suffered by Plaintiffs, the fact of which is expressly denied by

21  McKesson, were in direct and proximate result of sensitivities, medical conditions, reactions

22  and/or idiosyncrasies peculiar to Plaintiff Carol Moorhouse that were unknown, unknowable, or

23  not reasonably foreseeable to McKesson, and not as a direct and proximate result of wrongful

24  convictions on the part of the McKesson, the fact of which is expressly denied by McKesson.

25    45.    No act or omission of McKesson was a substantial factor in bringing about the

26  alleged injuries of Plaintiffs, nor was any such act or omission a contributing cause thereof, and

27  any alleged acts or omissions of McKesson were superseded by the acts or omissions of others,

SEDGWICK
DETERT, MORAN & ARNOLD ᴸᴸᴾ

28  including Plaintiffs, which were the independent, intervening and proximate cause of any injury,

-6-

ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

1 damage or loss sustained by Plaintiffs.

2  46. Plaintiffs' cause of action for alleged violation of the California Consumer Legal

3 Remedies Act ("CLRA"), Cal Civil Code § 1750, *et seq.,* is barred because Plaintiffs failed to

4 give proper notice as mandated by Cal. Civil Code § 1782(a)(1).  Since strict compliance with

5 the notice provisions of the CLRA is required, Plaintiffs' CLRA cause of action must be

6 dismissed with prejudice.

7  47. Plaintiffs' cause of action for alleged violation of the California Consumer Legal

8 Remedies Act ("CLRA"), Cal Civil Code § 1750, *et seq.,* is barred because Plaintiffs failed to

9 comply with the affidavit requirement of Cal. Civil Code § 1780(c).  Since strict compliance with

10 the notice provisions of the CLRA is required, Plaintiffs' CLRA cause of action must be

11 dismissed with prejudice.

12  48. Plaintiffs' Complaint fails to state a claim under the California Consumer Legal

13 Remedies Act ("CLRA"), Cal Civil Code § 1750, *et seq.,* because the CLRA is inapplicable to a

14 pharmaceutical products liability action.

15  49. Plaintiffs' claims are barred in whole or in part because Plaintiffs consented to the

16 alleged wrongful conduct.

17  McKesson adopts and incorporates by reference each and every other or additional

18 defense that is or may be applicable to McKesson that has been or may be pleaded by any other

19 defendants to this action not otherwise set forth herein.

20  WHEREFORE, McKesson prays that Plaintiffs take nothing by reason of said Complaint;

21 that McKesson be awarded costs of suit herein, including reasonable attorneys fees where

22 authorized by statute, contract or law, and such other and further relief as the court deems just;

23 and, that if McKesson is found liable, the degree of its responsibility for the resulting damages be

24 determined and that McKesson be held liable only for that amount of the total damages

25 proportionate to its responsibility for the same.

26 ////

27 ////

28 ////

1

## DEMAND FOR JURY TRIAL

2    McKesson hereby demands a trial by jury of the above-captioned matter.

3

4    DATED:  April 3, 2008                Respectfully submitted,

5
                                         SEDGWICK, DETERT, MORAN & ARNOLD LLP
6

7

8                                        By: _____
                                             Charles T. Sheldon
9                                            Michael L. Fox
                                             Marc Brainich
10
                                         and
11
                                         Galen D. Bellamy
12                                       Wheeler Trigg Kennedy LLP

13                                       Attorneys for Defendant McKesson Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP   28

-8-

ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market Plaza, Steuart Tower, 8th Floor, San Francisco, California 94105. On April 3, 2008, I served the within document(s):

### ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

☐ FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date.

☒ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via

### SEE ATTACHED SERVICE LIST

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on April 3, 2008, at San Francisco, California.

_____
Dawn Lyons

-9-
ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

SEDGWICK
DETERT, MORAN & ARNOLD LLP

SERVICE LIST

| **Attorneys for Plaintiffs**<br>**Carol Moorhouse and James Moorhouse**<br>Lawrence J. Gornick<br>(Email: lgornick@levinslaw.com)<br>LEVIN SIMES KAISER & GORNICK LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Phone: 415-646-7160 / **Fax: 415-981-1270** | **Attorneys for Defendants**<br>**Bayer Healthcare LLC and**<br>**Bayer Healthcare Pharmaceuticals Inc.**<br>Rodney M. Hudson<br>(Email: Rodney.Hudson@dbr.com)<br>DRINKER BIDDLE & REATH LLP<br>50 Fremont Street , 20th Floor<br>San Francisco, CA 94105-2235<br>Phone: 415-591-7500 / **Fax: 415-591-7510** |
|---|---|
| **Attorneys for Defendants**<br>**General Electric Company and**<br>**GE Healthcare Inc.**<br>Deborah C. Prosser<br>(Email: Deborah.Prosser@KutakRock.com)<br>KUTAK ROCK LLP<br>515 South Figueroa Street, Suite 1240<br>Los Angeles, CA 90071<br>Phone: 213-312-4000 / Fax: 213-312-4001 | **Attorneys for Defendant**<br>**Merry X-Ray Chemical Corp.**<br>H. Nathan James, Esq.<br>SEIFER, MURKEN, DESPINA, JAMES &<br>TEICHMAN<br>2135 Lombard Street<br>San Francisco, CA 94123<br>Phone:  415-749-5900 / **Fax: 415-749-0344** |
| **Attorneys for Defendants Covidien and**<br>**Mallinckrodt, Inc.**<br>Frank C. Rothrock<br>Thomas A. Woods<br>SHOOK, HARDY & BACON LLP<br>Jamboree Center<br>5 Park Plaza, Suite 1600<br>Irvine, CA 92164<br>Phone: 949-475-1500 / Fax: 949-475-0016 | **Attorneys for Defendant**<br>**Bracco Diagnostics, Inc.**<br>Michael C. Zellers<br>Mollie Benedict<br>Aggie B. Lee<br>TUCKER ELLIS & WEST LLP<br>515 South Flower Street<br>Forty-Second Floor<br>Los Angeles, CA 90071<br>Phone: 213-430-3400 / Fax: 213-430-3409 |
| **Attorneys for Defendants McKesson Corp.**<br>Charles T. Sheldon<br>(Email: charles.sheldon@sdma.com)<br>Michael L. Fox  (Email: michael.fox@sdma.com)<br>Marc Brainich (Email: marc.brainich@sdma.con)<br>SEDGWICK, DETERT, MORAN & ARNOLD LLP<br>One Market Plaza<br>Steuart Tower, 8th Floor<br>San Francisco, California 94105<br>Phone: 415-781-7900 / **Fax: 415-781-2635**<br>*and*<br>Galen D. Bellamy<br>(Email: bellamy@wtklaw.com)<br>WHEELER TRIGG KENNEDY LLP<br>1801 California Street, Suite 3600<br>Denver, Colorado 80202<br>Phone: 303-244-1800 / **Fax: 303-244-1879** | |

SEDGWICK
DETERT, MORAN & ARNOLD LLP

-10-

ANSWER OF MCKESSON CORPORATION AND DEMAND FOR JURY TRIAL

APR-03-2008  20:24                                                              P.02

1  Frank C. Rothrock (SBN: 54452)
   Thomas A. Woods (SBN: 210050)
2  SHOOK, HARDY & BACON L.L.P.
   Jamboree Center
3  5 Park Plaza, Suite 1600
   Irvine, California 92614-2546
4  Telephone:    (949) 475-1500
   Facsimile:    (949) 475-0016
5
6  Attorneys for Defendants denominated "Covidien, Inc."
   and "Mallinckrodt, Inc."
7

8                SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO            **FILED BY FAX**

10 CAROL MOORHOUSE and JAMES            )  CASE NO.: CGC-08-472978
   MOORHOUSE,                           )
11                                      )
            Plaintiffs,                 )  ANSWER AND AFFIRMATIVE
12                                      )  DEFENSES OF DEFENDANTS
       vs.                              )  DENOMINATED "COVIDIEN, INC." AND
13                                      )  "MALLINCKRODT, INC."
   BAYER HEALTHCARE                     )
14 PHARMACEUTICALS, INC.; BAYER         )
   HEALTHCARE LLC; GENERAL ELECTRIC     )
15 COMPANY; GE HEALTHCARE, INC.;        )  Complaint Filed:    Mar. 5, 2008
   COVIDIEN, INC.; MALLINCKRODT, INC.;  )  Case Management Conf.: Aug. 8, 2008
16 BRACCO DIAGNOSTICS, INC.;            )
   MCKESSON CORPORATION; MERRY X-       )
17 RAY CHEMICAL CORP.; and DOES 1       )
   through 35                           )
18                                      )
19          Defendants.                 )
                                        )

20

21      Defendants denominated "Covidien, Inc." and "Mallinckrodt, Inc." ("Defendants") answer

22 Plaintiffs' Complaint as follows:

23                              **GENERAL DENIAL**

24      1.      Pursuant to Code of Civil Procedure section 431.30, subdivision (d),

25 Defendants generally and specifically deny each and every allegation in Plaintiffs' Complaint, the

26 whole thereof, and each and every cause of action therein, and further deny that Plaintiffs have

27 sustained or are entitled to recover damages in the sum alleged, or in any sum whatsoever. Further

28 answering Plaintiff's Complaint, Defendants deny Plaintiffs have sustained any injury, damage, or

                                                    ANSWER AND AFFIRMATIVE DEFENSES

68692V1

1    loss by reason of any act or omission by these answering Defendants.

2

3                              **AFFIRMATIVE DEFENSES**

4              1.       Defendants set forth below their affirmative defenses.    By setting forth these

5    affirmative defenses, Defendants do not assume the burden of proving any fact, issue, or element of

6    a cause of action where such burden properly belongs to Plaintiffs.   Moreover, nothing herein stated

7    is intended or shall be construed as an acknowledgment that any particular issue or subject matter is

8    relevant to Plaintiffs' allegations.

9                              **FIRST AFFIRMATIVE DEFENSE**

10                             **(Failure to State a Claim)**

11             2.       Plaintiffs' Complaint, including each and every count thereof, fails to state a claim

12   upon which relief can be granted against Defendants.

13                           **SECOND AFFIRMATIVE DEFENSE**

14                          **(Preemption - Supremacy Clause)**

15             3.       Pursuant to the Supremacy Clause of the United States Constitution, the claims set

16   forth in the Complaint are preempted by the Food, Drug and Cosmetic Act (F.D.C.A.), 21 U.S.C. §

17   301 *et seq.* and any ensuing regulations promulgated by the Food and Drug Administration

18   contained in Chapter 21 of the Code of Federal Regulations.   The product referred to in the

19   Complaint was and is controlled by federal law, which governs the manufacture, distribution, and

20   sale of said products at all times.  Plaintiffs' claims are thus preempted in whole or in part such that

21   they fail to state a cause of action upon which relief can be granted.

22

23

24

25

26

27                                                                                   Exh. A
                                                                                      -45-
28
                                          2

1

THIRD AFFIRMATIVE DEFENSE

2

(Superseding/Intervening Cause)

3      4.    If Plaintiffs have been damaged, which Defendants deny, such damages were caused

4  by one or more unforeseeable, independent, intervening, and/or superseding events for which

5  Defendants are not legally responsible.

6

FOURTH AFFIRMATIVE DEFENSE

7

(Causation – Preexisting Condition)

8      5.    If Plaintiffs have been damaged, which Defendants deny, those damages, if any, were

9  caused by medical conditions or processes (whether pre-existing or contemporaneous) unrelated to

10  OptiMARK®.

11

FIFTH AFFIRMATIVE DEFENSE

12

(Learned Intermediary Doctrine)

13      6.    Plaintiffs' claims are barred by the learned intermediary doctrine.

14

SIXTH AFFIRMATIVE DEFENSE

15

(*Brown v. Superior Court*/Restatement (Second) & (Third) of Torts)

16      7.    Plaintiffs' claims are barred, in whole or in part, by the limitations upon the doctrine

17  of strict product liability as set forth in *Brown v. Superior Court* (1988) 44 Cal.3d 1049, Comment

18  (j) and/or Comment (k) of § 402A of the Restatement (Second) of Torts, as well as by §§ 4 and 6 of

19  the Restatement (Third) of Torts (Product Liability).

20

SEVENTH AFFIRMATIVE DEFENSE

21

(State-of-the-Art)

22      8.    The claims set forth in the Complaint are barred because the methods, standards and

23  techniques used in formulating OptiMARK® and in issuing warnings and instructions about its use

24  conformed to the generally recognized, reasonably available and reliable state of knowledge in the

25  field at the time OptiMARK® was manufactured.  All acts of Defendants at the time of the alleged

26  manufacture, sale and/or distribution of the product at issue were in conformity with the state-of-the-

27  art at such times.  Further, the methods, standards, and techniques used in manufacturing and/or

28

Exh. A
-46-

3

48692V1

1  marketing the product at issue, and in issuing warnings and instructions with respect to the use of

2  such product, were in conformity with industry custom, usage, and standards and/or legislative,

3  administrative, and regulatory standards.  Any alleged defects of the product at issue, and/or any

4  alternative design claimed by Plaintiffs were not known and, in light of the existing, reasonably

5  available scientific and technological knowledge, could not have been known.  Any such alternative

6  design was not scientifically or technologically feasible, nor was it economically practical.

### EIGHTH AFFIRMATIVE DEFENSE

**(Informed Consent/Assumption of Risk)**

9.    The claims set forth in Plaintiffs' Complaint are barred by the doctrines of informed

consent and assumption of risk.

### NINTH AFFIRMATIVE DEFENSE

**(Scientifically Unknown/Unknowable Risk)**

10.    The design characteristics complained of in Plaintiffs' Complaint, the alleged defects

of the product at issue, and/or any alternative design claimed by Plaintiffs were not known and, in

light of the existing, reasonably available scientific and technological knowledge, could not have

been known.  Any such alternative design was not scientifically or technologically feasible, nor was

it economically practical.

### TENTH AFFIRMATIVE DEFENSE

**(Lack of Defect)**

11.    At no time was OptiMARK® defective or unreasonably dangerous.

### ELEVENTH AFFIRMATIVE DEFENSE

**(Causation – Lack of Proximate Cause/Substantial Factor)**

12.    Any conduct by Defendants, none being admitted, was so insubstantial as to be

insufficient to be a proximate or substantial contributing cause of the injuries alleged in the

Complaint.

///

///

4

ANSWER AND AFFIRMATIVE DEFENSES

48692V1

1    <u>TWELFTH AFFIRMATIVE DEFENSE</u>

2    **(Defense of Consent)**

3    13.    Plaintiffs' claims are barred because Plaintiffs were aware of the known risks

4    associated with the use of OptiMARK®.

5    <u>THIRTEENTH AFFIRMATIVE DEFENSE</u>

6    **(Federal Preemption)**

7    14.    Plaintiffs' claims are barred because Defendants complied with all applicable statutes

8    and with the requirements and regulations of the FDA.

9    <u>FOURTEENTH AFFIRMATIVE DEFENSE</u>

10    **(Product Misuse/Alteration)**

11    15.    If Plaintiffs have been damaged, which Defendants deny, such damages were caused

12    by any misuse and/or abuse of the product at issue.  The product described in Plaintiffs' Complaint

13    was modified, altered, or changed from the condition in which it was sold, and this modification,

14    alteration, or change caused plaintiffs' alleged damages, if any.

15    <u>FIFTEENTH AFFIRMATIVE DEFENSE</u>

16    **(Failure to State a Claim - Uncertainty - Lack of Specificity)**

17    16.    Plaintiffs' fraud-based claims (including misrepresentation) are barred by the failure

18    to plead the necessary elements of those claims with particularity.

19    <u>SIXTEENTH AFFIRMATIVE DEFENSE</u>

20    **(Lack of Reliance)**

21    17.    Defendants deny that Plaintiffs reasonably or justifiably relied on any alleged

22    representation or other conduct by any of the answering Defendants to their detriment.

23    <u>SEVENTEENTH AFFIRMATIVE DEFENSE</u>

24    **(Contributory Fault/Negligence - Plaintiff)**

25    18.    If Plaintiffs have been damaged, which Defendants deny, such damages were caused

26    in whole or in part by the negligence/fault of Plaintiffs.

27    ///

28

Exh. A
-48-

48692V1

1

<u>EIGHTEENTH AFFIRMATIVE DEFENSE</u>

2

**(Contributory Fault/Negligence - Others)**

3      19.    If Plaintiffs have been damaged, which Defendants deny, such damages were caused

4   in whole or in part by the negligence/fault of one or more persons and/or entities for whose conduct

5   Defendants are not legally responsible.  Such contributory negligence bars, in whole or in part, the

6   damages, if any, that Plaintiffs seeks to recover herein.

7

<u>NINETEENTH AFFIRMATIVE DEFENSE</u>

8

**(Federal Preemption)**

9      20.    Plaintiffs' claims against Defendants are expressly and/or impliedly preempted by

10  federal law, including, but not limited to, the provisions of the Public Health Service Act, 42 U.S.C.

11  § 301, et seq., and any ensuing regulations promulgated by the Food and Drug Administration

12  contained in Chapter 21 of the Code of Federal Regulations.

13

<u>TWENTIETH AFFIRMATIVE DEFENSE</u>

14

**(Proposition 51)**

15     21.    The liability of these answering Defendants, if any, in this action is subject to the

16  limitations set forth in the Fair Responsibility Act of 1986 (Civ. Code, §§ 1431-1431.5).

17

<u>TWENTY-FIRST AFFIRMATIVE DEFENSE</u>

18

**(Constitutional Defenses – Joint & Several Liability)**

19     22.    If Plaintiffs sustained damages, which Defendants deny, the application of joint and

20  several liability law violates Defendants' Constitutional rights under the Fifth, Sixth, Eighth and

21  Fourteenth Amendments of the United States Constitution and the California Constitution, in one or

22  more of the following respects:

23     (a)    The application of joint and several liability is equivalent to the imposition of an

24  excessive fine or cruel and unusual punishment;

25     (b)    The application of joint and several liability exposes Defendants to multiple

26  punishments and fines for the same act;

27

28

6

ANSWER AND AFFIRMATIVE DEFENSES

48692V1

1    (c)    The application of joint and several liability discriminates against Defendants in

2    that Defendants may be held legally responsible for paying damage awards entered against other

3    Defendants depending solely on the status or material wealth of various defendants, thereby denying

4    equal protection under the law;

5    (d)    The application of joint and several liability without informing the jury of the

6    effect of joint and several liability violates the equal protection and substantive and procedural due

7    process requirements of both the California Constitution and the United States Constitution; and

8    (e)    The application of joint and several liability constitutes an impermissible burden upon

9    interstate commerce and otherwise violates defendants' equal protection and due process rights.

10    ## TWENTY-SECOND AFFIRMATIVE DEFENSE

11    ### (Comparative Fault)

12    23.    If Plaintiffs have been damaged, which Defendants deny, the negligence/fault of

13    Plaintiffs or other persons and/or entities must be compared, thereby reducing or completely barring

14    Plaintiffs' rights to recover against Defendants.

15    ## TWENTY-THIRD AFFIRMATIVE DEFENSE

16    ### (Failure to Mitigate Damages)

17    24.    Plaintiffs have failed to mitigate their alleged damages and, therefore, any recovery

18    should not include alleged damages that Plaintiffs could have avoided by reasonable care and

19    diligence.

20    ## TWENTY-FOURTH AFFIRMATIVE DEFENSE

21    ### (Statute of Limitations)

22    25.    Each purported cause of action of Plaintiffs' Complaint is barred by the applicable

23    statutes of limitations including, but not limited to, the provisions of Code of Civil Procedure former

24    section 340, subdivision (3), or Code of Civil Procedure sections 335.1, 340.5, 340.8, 343, and Civil

25    Code section 1783.

26    ///

27    ///

28

Exh. A
-50-

48692V1

1                    **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

2                     **(Equitable Defenses/Laches/Estoppel)**

3       26.     Each purported cause of action of Plaintiffs' Complaint is barred by the equitable

4 doctrines of laches, waiver, good faith, and estoppel.

5                    **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

6                    **(Failure to Join Indispensable Parties)**

7       27.     Plaintiffs' claims are barred for failure to join indispensable parties.

8                  **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

9                         **(Improper Joinder)**

10       28.     Plaintiffs' Complaint is an improper joinder and an improper accumulation of parties.

11                  **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

12             **(Failure to State a Claim – Punitive Damages)**

13       29.     Plaintiffs have failed to state a claim for which punitive damages may be awarded.

14                  **TWENTY-NINTH AFFIRMATIVE DEFENSE**

15     **(Failure to State a Claim/Failure of Proof – Punitive Damages)**

16       30.     Plaintiffs' claim for punitive damages fails to allege facts which meet the clear and

17 convincing standards of proof required for an award of punitive damages.

18                      **THIRTIETH AFFIRMATIVE DEFENSE**

19                **(Constitutional Defenses – Punitive Damages)**

20       31.     Insofar as Plaintiffs seek recovery of punitive damages, their claims are barred by the

21 provision of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and

22 article 1, sections 7, 15, 16, and 17 of the California Constitution for each of the following reasons:

23       (a)     California law fails to provide adequate notice of the conduct that will subject a

24 defendant to punitive damages;

25       (b)     California law fails to provide a defendants with adequate notice of the severity of the

26 penalty that may be imposed in the form of punitive damages;

27

28                                                   Exh. A
                                              -51-

48692V1

1    (c)    California law permits the imposition of grossly excessive penalties in the form of

2    punitive damages;

3    (d)    California law fails to provide a meaningful and appropriate review of punitive

4    damage awards by trial and appellate courts and fails to provide for de novo review of such awards

5    as mandated in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* (2001) 532 U.S. 424;

6    (e)    Notwithstanding the fact that punitive damages are quasi-criminal in nature,

7    California law fails to require proof beyond a reasonable doubt and a verdict by a unanimous jury as

8    a condition to the imposition of punitive damages;

9    (f)    California law permits the assessment and measure of punitive damages to be based,

10    in significant part, upon the wealth of the defendant; and

11    (g)    Plaintiffs' claim for punitive damages cannot be sustained to the extent it seeks to

12    punish defendants for alleged harm to non-parties or persons who are not before the court because

13    imposition of punitive damages under such circumstances would violate Defendants' procedural and

14    substantive due process rights and equal protection rights under the Fifth and Fourteenth

15    Amendments to the United States Constitution and defendants' due process and equal protection

16    rights under article 1, section 7 of the California Constitution, and would be improper under the

17    common law and public policies of the United States and California.

18    ## THIRTY-FIRST AFFIRMATIVE DEFENSE

19    ### (Offset)

20    32.    Defendants are entitled to a set-off, should any damages be awarded against it, for the

21    entire amount of damages or settlement amounts recovered from other sources.

22    ## THIRTY-SECOND AFFIRMATIVE DEFENSE

23    ### (Offset)

24    33.    Defendants are entitled to an offset of any prejudgment monies received by Plaintiffs

25    from any settling defendant pursuant to Code of Civil Procedure Section 877, subdivision (a).

26    ///

27    ///

28

9

Exh. A
-52-

ANSWER AND AFFIRMATIVE DEFENSES

48692V1

1

## THIRTY-THIRD AFFIRMATIVE DEFENSE

2

### (Offset)

3      34.    Should defendants be held liable to Plaintiffs, which liability is specifically denied,

4  Defendants would be entitled to a set off for the total of all amounts paid to Plaintiffs from all

5  collateral sources.

6

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

7

### (Failure of Notice - CLRA)

8      35.    Plaintiffs' cause of action for alleged violation of the California Consumer Legal

9  Remedies Act ("CLRA") is barred by Plaintiffs' failure to provide proper notice as required by Cal.

10  Civ. Code § 1782 (a)(1).

11

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

12

### (Failure of Affidavit Requirement – CLRA)

13      36.    Plaintiffs' cause of action for alleged violation of the California Consumer Legal

14  Remedies Act ("CLRA") is barred because Plaintiffs failed to comply with the affidavit requirement

15  of Cal. Civ. Code § 1780(c).

16

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

17

### (Failure to State a Claim)

18      37.    Plaintiffs' cause of action for alleged violation of the California Consumer Legal

19  Remedies Act ("CLRA") fails to state a claim against Defendants to the extent the CLRA is

20  inapplicable to pharmaceutical products liability actions.

21

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

22

### (Unintentional Acts/Bona Fide Error Defense)

23      38.    Plaintiffs' cause of action for alleged violation of the California Consumer Legal

24  Remedies Act ("CLRA"), if any, is precluded by the defenses available under Civ. Code § 1784.

25  ///

26  ///

27  ///

28

Exh. A
-53-

ANSWER AND AFFIRMATIVE DEFENSES

48692V1

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Violation of Commerce Clause)

39.     Plaintiffs' claims are barred, in whole or in part, by the Commerce Clause of the United States Constitution because they purport to regulate interstate commerce and impermissibly place an undue burden on interstate commerce.


Dated: April 3, 2008                                    SHOOK, HARDY & BACON L.L.P.


By: _____
        Frank C. Rothrock
        Thomas A. Woods
Attorneys    for    Defendants    denominated
"Covidien, Inc." and "Mallinckrodt, Inc."

Exh. A
-54-

ANSWER AND AFFIRMATIVE DEFENSES

48692V1

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1600, Irvine, California 92614.

On April 3, 2008 I served on the interested parties in said action the within:

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS DENOMINATED "COVIDIEN, INC." AND "MALLINCKRODT, INC."**

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☒    (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

(FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed above. The facsimile numbers used complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a report of the transmission, a copy of which is attached to the original of this declaration.

(HAND DELIVERY) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered by hand to the addressee(s) designated.

(BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, on December 9, 2004, to be delivered by their next business day delivery service on November 10, 2004, to the addressee designated.

☒    (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 3, 2008, at Irvine, California.

_____          _____
        Kim Brunton                                              (Signature)
      (Type or print name)

48696v1

1

## SERVICE LIST

2

3    Debra DeCarli, Esq.
     Lawrence J. Gornick, Esq.
4    LEVIN SIMES KAISER & GORNICK LLP
     44 Montgomery Street, Suite 3600
5    San Francisco, CA  94104

6
     Tel:  (415) 646-7160
7    Fax: (415) 981-1270

8    **Attorneys for Plaintiffs CAROL**
     **MOORHOUSE and JAMES**
9    **MOORHOUSE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

48696v1

# EXHIBIT "B"

1    RODNEY M. HUDSON (State Bar No. 189363)
     DRINKER BIDDLE & REATH LLP
2    50 Fremont Street, 20th Floor
     San Francisco, California 94105-2235
3    Telephone: (415) 591-7500
     Facsimile: (415) 591-7510
4
     Attorneys for Defendants
5    BAYER HEALTHCARE PHARMACEUTICALS, INC.,
     BAYER HEALTHCARE LLC
6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         FOR THE COUNTY OF SAN FRANCISCO

10

11   CAROL MOORHOUSE and JAMES            Case No. CGC-08-472970
     MOORHOUSE,
12                                        **DEFENDANTS BAYER
             Plaintiffs,                  HEALTHCARE
13                                        PHARMACEUTICALS, INC. AND
         v.                               BAYER HEALTHCARE, LLC'S
14                                        CONSENT TO REMOVAL OF
     BAYER HEALTHCARE                     ACTION**
15   PHARMACEUTICALS, INC.; BAYER
     HEALTHCARE LLC; GENERAL
16   ELECTRIC COMPANY; GE
     HEALTHCARE, INC.; COVIDIEN, INC.;
17   MALLINCKRODT, INC.; BRACCO
     DIAGNOSTICS, INC.; McKESSON
18   CORPORATION; MERRY X-RAY
     CHEMICAL CORP.; and DOES 1 through
19   35

20           Defendants.

21

22       Defendants BAYER HEALTHCARE PHARMACEUTICALS, INC. ("BHCP")

23   and BAYER HEALTHCARE LLC ("BHC") hereby consent to the removal of this action

24   by co-defendants GENERAL ELECTRIC COMPANY and GE HEALTHCARE, INC.

25       BHCP and BHC were served with the original complaint in this action on

26   March 6, 2008. For purposes of diversity jurisdiction, BHCP is a Delaware corporation

27   with its principal place of business in New Jersey. BHC is a Delaware limited liability

28   company whose sole member is Bayer Corporation. For purposes of BHC's citizenship

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\397895\1                    CONSENT TO REMOVAL OF ACTION

                                                            Exh. B
                                                             -58-

1  as a limited liability company, Bayer Corporation is incorporated under the laws of

2  Indiana with its principal place of business in Pennsylvania.

3

4  Dated: April 2, 2008                                DRINKER BIDDLE & REATH LLP

5

6                                                       RODNEY M. HUDSON

7                                                       Attorneys for Defendants
                                                        BAYER HEALTHCARE
8                                                       PHARMACEUTICALS, INC., BAYER
                                                        HEALTHCARE LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SFI\397895\1

2

CONSENT TO REMOVAL OF ACTION

Exh. B
-59-

# EXHIBIT "C"

1  SHOOK, HARDY & BACON L.L.P.
   Frank C. Rothrock (SBN: 54452)
2  Thomas A. Woods (SBN: 210050)
   Jamboree Center
3  5 Park Plaza, Suite 1600
   Irvine, California 92614-2546
4  Telephone: 949-475-1500
   Facsimile: 949-475-0016
5
   Attorneys for Defendants denominated "Covidien, Inc."
6  and "Mallinckrodt, Inc."

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  CAROL MOORHOUSE and JAMES        )  Case No.:
    MOORHOUSE,                       )
12                                   )
              Plaintiffs,            )
13                                   )
         vs.                         )  **DECLARATION OF THOMAS A.**
14                                   )  **WOODS IN CONSENT TO**
    BAYER HEALTHCARE                 )  **REMOVAL OF ACTION TO**
15  PHARMACEUTICALS, INC.; BAYER     )  **FEDERAL COURT**
    HEALTHCARE LLC; GENERAL          )
16  ELECTRIC COMPANY; GE             )
    HEALTHCARE, INC.; COVIDIEN,      )
17  INC.; MALLINCKRODT, INC.;        )
    BRACCO DIAGNOSITRICS, INC.;      )
18  MCKESSON CORPORATION;            )
    MERRY X-RAY CHEMICAL CORP.;      )
19  and DOES 1 through 35            )
                                     )
20            Defendants.            )
                                     )
21                                   )
                                     )
22                                   )

23  I, Thomas A. Woods, hereby declare:

24       1.    The following statements are true, correct and within my personal

25  knowledge. If sworn as a witness, I could and would testify competently thereto.

26       2.    I am a member of the law firm of Shook, Hardy & Bacon L.L.P., national

27  counsel for Defendants denominated "Mallinckrodt, Inc." and "Covidien, Inc.."

28

DECLARATION OF THOMAS A. WOODS RE: REMOVAL

48682V1

1  (hereinafter "Defendants").  My office address is Shook, Hardy & Bacon L.L.P.,

2  Jamboree Center, 5 Park Plaza, Suite 1600, Irvine, California 92614.

3      3.    According to Plaintiffs' Complaint, this case involves products liability

4  and consumer protection claims related to the design, manufacture, and sale of the

5  Magnetic Resonance Imaging ("MRI") contrast agent, Gadolinium.  Mallinckrodt Inc.

6  is the manufacturer, designer, and seller of a Gadolinium-based MRI contrast agent

7  known as OptiMARK®.

8      4.    Based on my firm's role as national counsel for Defendants and my

9  firm's representation of Mallinckrodt in litigation filed against it regarding

10 OptiMARK®, I can attest to the following:

11      (a)    Mallinckrodt Inc. is a company incorporated in the State of

12 Delaware, with a principal place of business in Missouri and,

13      (b)    Mallinckrodt Inc. was served in this lawsuit on March 6, 2007.

14      (c)    Covidien Ltd. is neither incorporated in, nor maintains its principal

15 place of business in, California.

16      (d)    Covidien Ltd. was served in this lawsuit on March 6, 2007.

17      5.    Mallinckrodt Inc. and Covidien Ltd. consent to the removal of this action

18 by Defendant GE Healthcare Inc.

19      I declare under penalty of perjury under the laws of the United States of

20 America that the foregoing is true and correct.  Executed on this 3ʳᵈ day of April,

21 2008.

22

23                                    _____

24                                    Thomas A. Woods

25

26

27

28

                                    2

# EXHIBIT "D"

1   TUCKER ELLIS & WEST LLP
    MICHAEL C. ZELLERS-STATE BAR NO. 146904
2   MOLLIE BENEDICT-STATE BAR NO. 187084
    AGGIE B. LEE-STATE BAR NO. 228332
3   515 S. Flower Street, 42nd Floor
    Los Angeles, CA 90071-2223
4   Telephone: (213) 430-3400
    Facsimile: (213) 430-3409
5   michael.zellers@tuckerellis.com
    mollie.benedict@tuckerellis.com
6   aggie.lee@tuckerellis.com

7   Attorneys for Defendant
    BRACCO DIAGNOSTICS INC.

8

9              UNITED STATES DISTRICT COURT

10   NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11   CAROL MOORHOUSE and JAMES        ) Case No.
     MOORHOUSE,                        )
12                                     )
                                       )
13          Plaintiffs,                ) **DECLARATION OF AGGIE B. LEE**
                                       ) **IN SUPPORT OF DEFENDANT**
14          v.                         ) **BRACCO DIAGNOSTICS INC.'S**
                                       ) **CONSENT TO REMOVAL OF**
15   BAYER HEALTHCARE                  ) **ACTION UNDER 28 U.S.C. §**
     PHARMACEUTICALS, INC.; BAYER     ) **1441(b)**
16   HEALTHCARE LLC; GENERAL          )
     ELECTRIC COMPANY; GE             )
17   HEALTHCARE, INC.; COVIDIEN,       )
     INC.; MALLINCKRODT, INC.;         )
18   BRACCO DIAGNOSTICS, INC.;         )
     McKESSON CORPORATION;            )
19   MERRY X-RAY CHEMICAL CORP.;      )
     and DOES 1 through 35,            )
20                                     )
            Defendants.                )
21                                     )
                                       )
22   _____      )

23

24

25

26

27

28

_____
DECLARATION OF AGGIE B. LEE IN SUPPORT OF DEFENDANT BRACCO
DIAGNOSTICS INC.'S CONSENT TO REMOVAL

L:\manage\11255\00006\606119\1

## DECLARATION OF AGGIE B. LEE

I, Aggie B. Lee, declare as follows:

1.      I am an attorney at law duly authorized to practice before the courts of the State of California and I am an associate with the law firm of Tucker Ellis & West LLP, attorneys for Defendant Bracco Diagnostics Inc. ("BDI"). I have personal knowledge of all of the facts attested to in this declaration and could competently testify thereto if called as a witness in any legal proceeding.

2.      On March 5, 2008, Plaintiffs Carol Moorhouse and James Moorhouse filed a complaint in the Superior Court of California, San Francisco County captioned as *Carol Moorhouse, et al. v. Bayer Healthcare Pharmaceuticals, Inc., et al.*, Case No. CGC08472978.

3.      On March 6, 2008, BDI's agent for service of process was served with the Complaint, thus removal of this case to federal court is timely.

4.      BDI consents to removal of this case to the United States District Court for the Northern District of California.

5.      BDI is incorporated in Delaware and has its principal place of business in New Jersey.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

2.

DECLARATION OF AGGIE B. LEE IN SUPPORT OF DEFENDANT BRACCO
DIAGNOSTICS INC.'S CONSENT TO REMOVAL

LAimanger/11255/00006/606119/1

1     I declare under penalty of perjury under the laws of the State of California

2 and the laws of the United States of America that the foregoing is true and correct

3 and that this declaration is executed by me on this 31st day of March, 2008, in Los

4 Angeles, California.

5

6                             Aggie B. Lee

7 Of Counsel:

8 Thomas N. Sterchi

  Patrick Lysaught

9 Paul S. Penticuff

10 Elizabeth McCulley

  BAKER STERCHI COWDEN & RICE, L.L.C.

11 2400 Pershing Road, Suite 500

12 Kansas City, MO 64108

  Telephone:  (816) 471-2121

13 Facsimile:  (816) 472-0288

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "E"

## DECLARATION OF GREG YONKO

I, Greg Yonko, declare and say that:

1.      I am the Senior Vice President of purchasing for McKesson Corporation ("McKesson"), a defendant named in this action. All of the facts stated in this declaration are of my own personal knowledge, and if called as a witness, I would and could competently testify to these facts.

2.      McKesson is engaged in the business of distributing and selling various medical products. With regard specifically to the product known as gadolinium-based contrast dyes, McKesson's role in the chain of distribution is, and has always been, to sell this product line in various imaging facilities in the same packaging in which it was received from the manufacturer. McKesson does not, and did not, design, manufacture, or administer any gadolinium-based contrast agents. McKesson does not, and did not, design, test, manufacture, or label any gadolinium-based contrast agents.

3.      With respect specifically to the products known as MRI and MRA machines used in conjunction with gadolinium-based contrast agents, McKesson has, and had no function or role in the chain of distribution of these machines, including but not limited to no role in the designing, testing, manufacturing, or labeling of these products.

I declare under penalty of perjury under the laws of the United States of America and of California that the foregoing is true and correct.

Executed this _19_ day of March 2008.

_____
                    Greg Yonko

4843-8530-9698.1

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF GREG YONKO                    CASE NO.

# EXHIBIT "F"

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF LARRY LAWSON**

I, Larry Lawson, declare and say that:

1.    I am employed as President of Merry X-Ray Chemical Corporation ("Merry X-Ray"), a defendant named in this action. I am over the age of 18 and competent to make this declaration. All of the facts stated in this declaration are of my own personal knowledge, and if called as a witness I would and could testify competently to these facts.

2.    Merry X-Ray is engaged in the business of distributing and selling various medical products. With regard specifically to the product line known as gadolinium-based contrast agents, Merry X-Ray's role in the chain of distribution is, and has always been, to sell this product line to various imaging facilities in the same packaging in which it was received from the manufacturer. Merry X-Ray does not, and did not, design, manufacture, market or administer any gadolinium-based contrast agents. Merry X-Ray does not, and did not, design, assemble or otherwise provide any of the packaging, labels or warnings for any gadolinium-based contrast agents. Merry-X-Ray does not, and did not, design, test, manufacture, label, or market any gadolinium-based contrast agents.

3.    With respect specifically to the products known as MRI and MRA machines used in conjunction with gadolinium-based contrast agents, Merry X-Ray has, and had, no function or role in the chain of distribution of these machines, including but not limited to no role in the designing, testing, manufacturing, labeling or marketing of these products.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: March 17, 2008

Larry Lawson, Declarant

4818-8643-2002.1

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF LARRY LAWSON