1    Deborah C. Prosser (SBN 109856)
     Stephanie A. Hingle (SBN 199396)
2    KUTAK ROCK LLP
     515 So. Figueroa Boulevard, Suite 1240
3    Los Angeles, CA 90071
     Telephone:   (213) 312-4000
4    Facsimile:   (213) 312-4001
     Email:  Deborah.Prosser@KutakRock.com
5    Email:  Stephanie.Hingle@KutakRock.com

6    Attorneys for Defendants
     GENERAL ELECTRIC COMPANY and
7    GE HEALTHCARE INC.

8                    **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND**

10

11

12   CAROL MOORHOUSE and              Case No.  3:08-CV-01831 SBA
     JAMES MOORHOUSE,

13              Plaintiffs,

14        v.                          **DEFENDANTS GENERAL
                                      ELECTRIC COMPANY AND GE
15   BAYER HEALTHCARE                 HEALTHCARE INC.'S OPPOSITION
     PHARMACEUTICALS, INC.;           TO PLAINTIFFS' MOTION FOR
16   BAYER HEALTHCARE LLC;            REMAND**
     GENERAL ELECTRIC
17   COMPANY; GE HEALTHCARE,          **[Filed Concurrently With Declaration
     INC.; COVIDIEN, INC.;            of Vito Pulito; Declaration of Stephanie
18   MALLINCKRODT, INC.;              A. Hingle; *Proposed* Order; and
     BRACCO DIAGNOSTICS, INC.;        Appendix of Federal Authority]**
19   McKESSON CORPORATION;
     MERRY X-RAY CHEMICAL             **[Jury Trial Demanded]**
20   CORP.; and DOES 1 through 35,
                                      (San Francisco County Superior Court,
21              Defendants.           Case No.: CGC-08-472978)

22                                    Reserved Hearing:

23                                    Date:        June 10, 2008
                                      Time:        1:00 p.m.
24                                    Courtroom:   3, Third Floor

25

26        Defendants General Electric Company and GE Healthcare Inc. hereby submit

27   their Opposition to Plaintiffs' Motion for Remand.

28   ///

## SUMMARY OF ARGUMENT

The Motion for Remand should be denied pursuant to 28 U.S.C. 1441(b). The non-diverse Distributor Defendants McKesson Corporation ("McKesson") and Merry X-Ray Chemical Corp. ("MXR") (the "Distributor Defendants") were fraudulently joined. There is no reasonable basis for any of Plaintiffs' claims against these Distributor Defendants. (See *Maffei v. Allstate Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006).)

(1) Plaintiffs' Complaint fails to allege a factual nexus between the Distributor Defendants and the Gadolinium-based contrast agent ("GBCA") products at issue in this case.

(2) Plaintiffs' claims against the Distributor Defendants are not viable because California law does not recognize strict liability or negligent failure to warn causes of action against distributors in the prescription drug context. (See *Leeson v. Merck & Company*, 2006 WL 3230047 *3 (E.D. Cal. 2006).)

(3) Plaintiffs' Consumer Legal Remedies Act ("CLRA") claims are not viable as a matter of law as there is no precedent that applies the CLRA to prescription drugs, or to any non-consumer products, and are also jurisdictionally barred due to violation of the statutory notice requirements.

(4) Plaintiffs' reliance on the remand orders issued in *Gleaton v. General Electric Company*, Civil Action No. 2-08-cv-01226 and *Gerber v. Bayer Corp*,. 2008 U.S. Dist. LEXIS 12174 (Case No. 07-05918, N.D. Cal 2008) is misplaced. *Gleaton* did not involve distributors; the non-diverse defendants in that case were treating physicians and an imaging center. *Gerber* involved non-diverse imaging facilities as well as distributors, and the remand order turned on burden issues which have been squarely addressed here. (See Section D, *infra*.)

1       Alternatively, the previously filed Application for Stay should be granted,

2   and ruling on the Motion for Remand deferred, to prevent potentially inconsistent

3   rulings, in light of the pending transfer of this case to Multi-District Litigation

4   ("MDL") Court in the United States District Court, Northern District of Ohio,

5   before the Hon. Dan A. Polster ("In Re: Gadolinium-Based Contrast Agent

6   Products Liability Litigation").  (See *Johnson v. Merck & Company*, 2007 WL

7   754882 (N.D. Cal. 20007) (Hon. William Alsup).

8   ## LEGAL ARGUMENT

9       Defendants General Electric Company and GE Healthcare Inc. ("GEHC")

10  (hereinafter "Removing Defendants") hereby submit their Opposition to Plaintiffs

11  Carol Moorhouse and James Moorhouse's ("Plaintiffs") Motion for Remand

12  ("Remand Motion"). In the Remand Motion, Plaintiffs do not dispute the fact that

13  full diversity of citizenship exists between them and the manufacturers, nor that the

14  amount in controversy exceeds the jurisdictional limit of $75,000.  Plaintiffs argue

15  only that they have alleged valid claims for distributor liability.  To the contrary,

16  Plaintiffs have not established the factual nexus between the Distributor Defendants

17  and the specific products named in the Complaint, and have failed to show that

18  there is any viable grounds for recovery against the Distributor Defendants under

19  California law.  The Remand Motion should be denied.

20  I.   **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

21      A.   **THE COMPLAINT**

22      The Complaint fails to link the Distributor Defendants to the specific

23  products at issue.  On the one hand, the Complaint identifies specific products to

24  each "Manufacturer Defendant"[1] named in the Complaint: (1) *Magnevist* as to

25  Bayer, (2) *Omniscan* as to GEHC, (3) *OptiMARK* as to Mallinckrodt and Covidien,

26  _____

27  [1] Plaintiffs allege that Bayer, GEHC, Mallinckrodt, Covidien and Bracco are manufacturers of gadolinium-based contrast agents.  However, not all of these domestic entities manufacture gadolinium based contrast agents.  For purposes of Plaintiffs' Remand Motion, we refer to these

28  entities as "Manufacturer Defendants" as alleged in the Complaint.

1    (4) *MultiHance* and *ProHance* as to Bracco.  (See Complaint ¶¶ 2, 8, 13, 14 and

2    20.)   On the other hand, Plaintiffs allege only *on information and belief that*

3    McKesson distributed Omniscan *and/or other gadolinium-based contrast agents*

4    that were injected into Mrs. Moorhouse, and Merry X-Ray distributed Magnevist

5    *and/or other gadolinium-based contrast agents* that were injected into Mrs.

6    Moorhouse (See Complaint ¶¶ 28 and 32.)

7         Although there are five different GBCA products named in the Complaint,

8    only two are named specifically with respect to the Distributor Defendants, and

9    even there, one is tenuously named only as to McKesson, and another is tenuously

10   named only as to Merry X-Ray.

11        In addition to these important factual gaps, all allegations in the Complaint

12   against the Distributor Defendants are derivative of claims against the manufacturer

13   defendants. The gravamen of the Complaint involves actions alleged to have been

14   taken at the *pre-clinical stage* of development of the GBCA products. ("In pre-

15   clinical studies during which gadolinium-based contrast agents were injected into

16   laboratory animals, consistent patterns of toxicity including nephrogenic fibrotic

17   changes in the kidneys and other body organs occurred." (See Complaint ¶ 48.) Pre-

18   clinical development is exclusively within the purview of product manufacturers.

19        Plaintiffs further allege that Bayer Healthcare Pharmaceuticals, Inc., Bayer

20   Healthcare LLC, General Electric Company, GE Healthcare Inc., Covidien, Inc.,

21   Mallinckrodt Inc., and Bracco Diagnostics Inc. ("Manufacturing Defendants")

22   never tested the safety of their products, yet knew of the risk of Nephrogenic

23   Systemic Fibrosis ("NSF") years before they issued warnings, and failed to warn

24   Plaintiff regarding the health risks, and sent warning letters to healthcare

25   professionals in September 2007.  (See Complaint ¶¶ 46, 52, 53, 55 and 56.)

26        There is not one allegation in the Complaint of individualized conduct

27   against the Distributor Defendants.  Rather, *all* "Defendants" knew or should have

28   known of the risks of the GBCA products, failed to warn Plaintiff and her

physicians of the risks, and have failed to advise consumers and/or healthcare providers of the risks. (See Complaint ¶¶ 53 and 55.)

Regarding the Sixth Cause of Action for Violation of the Consumer Legal Remedies Act ("CLRA"), the Complaint seeks restitution and monetary relief and is not, as represented in the Remand Motion, limited to injunctive relief. The Sixth Cause of Action specifically seeks "injunctive relief, restitution, and any other relief this Court deems proper, and attorneys' fees from Defendants." (See Complaint ¶ 96.) The Complaint also seeks without limitation "compensatory damages in excess of the jurisdictional amount." (See Complaint at Prayer No. 2.)

### B.    EVIDENCE IN SUPPORT OF REMOVAL

Neither McKesson nor MXR designed, manufactured or administered GBCA, including the GBCA products at issue in this case. (Larry Lawson Decl. ¶ 2-3; Greg Yonko Decl. ¶ 2-3.) Neither McKesson nor MXR designed, assembled or otherwise provided packaging, labels or warnings for any GBCA. (See *Id.*) In addition, specifically as to Omniscan™, the GBCA product linked to Removing Defendant GEHC in this case, neither of the Distributor Defendants named in the Complaint is involved in the design, manufacture, packaging, warning or labeling of that product. (See Vito Pulito Decl. ¶¶ 2-3.)

### C.    ALTERNATIVE REQUEST TO DEFER RULING ON REMAND

After removal, the Removing Defendants filed the Stay Application in light of the MDL established on February 27, 2008 in the Northern District of Ohio. (Stephanie A. Hingle Decl. ¶ 2, Exhibit "A.") Currently, there are 125 pending GBCA federal cases. Of those cases, 16 were filed directly in the MDL and 103 are subject to either Transfer Orders to the MDL or Conditional Transfer Orders to the MDL. The remaining 6 cases are the subject of notices of "tag along" actions in preparation for their transfer to the MDL. (Hingle Decl., ¶ 3.)

Currently, remand issues are present in the following GBCA cases: (1) this case, (2) *Geffen vs. General Electric Company, et. al.,* Civil Action No. 2:08-cv-

1110 SGL (JCRx) (Central District of California, Eastern Division), (3) *Shelton v. General Electric Company, et al.*, Civil Action No. 07-01951 (Western District of Louisiana), (4) *Ethington v. General Electric Company, et. al.* Civil Action No. 05985-MLC-TJB (District of New Jersey, Trenton Division); and (5) *Harris v. Bayer Healthcare Pharmaceuticals, Inc.*, Civil Action No. 2:08-cv-01896 SGL (JCRx) (Central District of California, Eastern Division).  (Hingle Decl. ¶ 4.)  In addition, in the future as other GBCA cases are filed, remand issues will likely be prevalent.  Absent a stay, there is a distinct possibility of inconsistent rulings by different federal district courts on virtually identical remand issues.

Plaintiffs will likely request that their later filed Remand Motion be heard prior to the Removing Defendants' Stay Application.  This suggestion is ill-advised, particularly against the background of this national litigation (See *Johnson v. Merck & Company*, 2007 WL 754882 (N.D. Cal. 2007) (in the context of pending MDL, grant of motion to stay obviates need of local district court to rule on remand motion and risk inconsistent rulings.)

## II.    ARGUMENT

### A.    THE FRAUDULENT JOINDER STANDARD

Fraudulent joinder exists "when there is no possibility of recovery against a resident defendant 'according to the settled rules of the state'." (*TPS Utilicom Services, Inc.*, 223 F.Supp.2d 1089, 1102 (C.D. Cal. 2002).)  While the test for fraudulent joinder resembles a Rule 12(b)(6) analysis in that the federal court accepts non-conclusory allegations as true, the Court's inquiry is broader than Rule 12(b)(6).  (*Id.* )  A defendant is fraudulently joined where there is no reasonable basis in fact for a claim against it.  (See *Maffei v. Allstate Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (joinder was fraudulent where defendant had 'no real connection [to] the controversy' because the allegations against the defendant were 'without any reasonable basis in fact').)  As set forth below, no reasonable basis exists for

1  proceeding against any of the non-diverse defendants.

2  **B.    THERE  IS  NO  FACTUAL  NEXUS  BETWEEN  THE**

3  **DISTRIBUTOR  DEFENDANTS  AND  THE  PRODUCTS**

4  **NAMED IN THIS CASE**

5  Plaintiffs offer no evidence in their Remand Motion showing that the five

6  GBCA products used in her treatment were distributed by either McKesson or

7  MXR.   Since the Complaint does not allege the dates or years, of the GBCA

8  injections, or even which imaging facilities treated Mrs. Moorhouse, it is unlikely

9  that Plaintiffs actually know the identity of distributors, if any, for these products.

10  Rather than conducting this due diligence, Plaintiffs chose to pursue a litigation

11  strategy, typical in many pharmaceutical mass torts, of naming a local distributor

12  simply to obtain a California state court forum and to attempt to defeat diversity.

13  In the absence of concrete allegations that these two Distributors actually did

14  distribute *each and every* GBCA product administered to Mrs. Moorhouse, and

15  without the names of the imaging facilities and the time periods of her treatments,

16  there is not even a factual threshold basis for liability against the Distributor

17  Defendants.  (See *Aronis vs. Merck & Co.,* 2005 WL 5518485 (E.D. Cal. 2006)

18  (distributor McKesson found fraudulently joined in light of deficient complaint,

19  noting "plaintiff [did] not allege McKesson contributed in any way to her injuries,

20  only that McKesson is a distributor.") The Complaint in the instant case provides

21  no nexus between the Distributors and Mrs. Moorhouse's injuries.

22  If the Court is not inclined to deny the Remand Motion, Defendants

23  respectfully request that ruling be deferred and Plaintiffs be required to provide

24  limited and specific discovery to establish facts entitling them to proceed with their

25  claims against the Distributor Defendants – such as the specific products at issue,

26  dates, locations and doctors administering the contrast agents, and other medical

27  record information from which the actual distributor could be determined.

28  ///

## C.  NONE OF PLAINTIFFS' CLAIMS AGAINST THE DISTRIBUTORS ARE VIABLE UNDER STATE LAW

Plaintiffs' claims against the Distributor Defendants for strict liability and negligent failure to warn fail as a matter of state law.  In the context of prescription drugs, no published California opinion has recognized a cause of action against distributors for failure to warn.  (See *Remand Motion* pp. 4, citing *Black vs. Merck & Company*, 2004 WL 5392660 (C.D. Cal. March 3, 2004) (in strict liability context, acknowledging that California courts have not "addressed whether distributors of prescription drugs can be strictly liable for failure to warn"); see also *Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1111-12 (citing *Anderson v. Owens-Corning Fiberglass Corp.* (1991) 53 Cal.3d 987, 1001) (in negligence context, "the knowledge or knowability requirement for failure to warn infuses some negligence concepts into strict liability cases" such that "in the failure-to-warn context, strict liability is to some extent a hybrid of traditional strict liability and negligence doctrine.")[2]

Given this absence of state authority, most California federal district courts have ruled on remand motions that there is no viable cause of action against non-diverse distributor defendants, including specifically, but not limited to, Defendant McKesson, and that the distributors were fraudulently joined. (See *Leeson v. Merck & Company*, 2006 WL 3230047 *3 (E.D. Cal.); *Cline v. Merck & Co.*, 2006 W.L. 1409555 (E.D. Cal. 2006); *English v. Merck & Co.*, 2007 U.S. Dist. LEXIS 14493 (E.D. Cal. 2007); *Vantine v. Merck & Co.* 2007 WL 516389 (E.D. Cal. 2007); *Beatty v. Merck & Co.*, 2006 WL 2943090 (E.D. Cal. 2006) (stay granted and

---

[2]  The *Carlin* Court distinguished negligence and strict liability as against *manufacturers* of prescription drugs on grounds not relevant to the instant Remand Motion, where the claims are for negligence and strict liability as against *distributors* of prescription drugs, the only difference between the two concepts is that in negligence, the plaintiff must also prove that the failure to warn fell below the accepted standard of care. (See *Carlin v. Superior Court*, 13 Cal.4th at 1112 (*citing Anderson v. Owens-Corning Fiberglass Corp.* (1991) 53 Cal.3d 987, 1001).)

1    remand denied).)   In denying the motion to remand where McKesson was joined as

2    a non-diverse defendant, the *Leeson* Court noted that fraudulent joinder of

3    McKesson (and other similarly situated distributor defendants) has been raised in

4    numerous cases throughout California. (See *Id.*)   **"Yet only a handful of judges**

5    **have found that California law does not clearly exempt distributors from strict**

6    **liability for failure to warn."**   (*Id.* referencing as the exception *Black*, supra.)

7    (emphasis added).)

8         To rule that there may be viable failure to warn claims against the Distributor

9    Defendants under state law would be tantamount to fabricating state law out of thin

10   air. Indisputably, current state law does not recognize such a claim "under the

11   settled rules of the state." (See *TPS Utilicom*, 223 F.Supp.2d at 1102.)   California

12   law treats prescription products differently from other products for purposes of

13   products liability claims.   While Plaintiffs rely on case law that generally holds

14   distributors liable for strict products liability (*Remand Motion* pp 4-5), this case law

15   is inapposite to the issues presented here.   (See *Brown vs. Superior Court,* 44

16   Cal.3d 1049, 1061 (1988) ("a drug manufacturer's liability for a defective design

17   shall not be measured by the standards of strict liability.")   The Court reasoned that

18   strict liability for prescription drugs flows not from a defect in the product, but from

19   a failure to warn of risk inherent in the drug – warnings that by federal law are

20   provided exclusively by the prescription drug manufacturer. (*Id.* at 1061-1069.)

21        The *Brown* Court held that a drug manufacturer cannot be held strictly liable

22   or liable for breach of express or implied warranties for injuries caused by

23   prescription drugs "so long as the drug was properly prepared and accompanied by

24   warnings of its dangerous propensities that were either known or reasonably

25   scientifically knowable at the time of distribution." (*Id.*   at 1069.)   Further, under

26   the learned intermediary doctrine, the duty to warn about a drug's risk runs from the

27   manufacturer to the physician, and then from the physician to the patient.   (*Id.* at

28   1061-1 and n.9; *Carlin v. Superior Court,* 13 Cal4th 1104, 1116 (1996.)

1    Thus, those entities not involved in the development of what is "known or

2  reasonably scientifically knowable" -- such as distributors -- cannot be liable

3  because they do not provide warnings. In the instant case, McKesson and MXR

4  have affirmatively shown that they play no role whatsoever in the development of

5  knowledge of risks, and that they pass on the finished GBCA products, *with

6  manufacturer labels and warnings intact and unchanged.* (See Lawson Decl.¶ 2-3;

7  Yonko Decl. ¶ 2-3.)   Likewise, GEHC has confirmed that with respect to the

8  Omniscan™ product, these distributors play no role at all in the formulation of the

9  warnings or labeling. (See Pulito Decl.¶ 2-3.)

10    Although the McKesson and MXR Declarations were attached to the Notice

11  of Removal, Plaintiffs fail to address any of these points in their Remand Motion.

12  Instead, Plaintiffs' Complaint and Remand Motion lump the Distributors with the

13  Manufacturer Defendants as the generic "Defendants."   In reality, they are very

14  different.  On the one hand, the Manufacturer Defendants conduct the pre-clinical

15  research,  manufacture the product and submit the product label warning to the

16  FDA for approval. On the other hand, the Distributors do no research, design,

17  manufacture, packaging  or labeling. (*Id.*)

18    Plaintiffs' reliance on the remand orders recently issued in two GBCA cases,

19  *Gleaton v. General Electric Company*, Civil Action No. 2-08-cv-01226 and *Gerber*

20  *v. Bayer Corp*,. 2008 U.S. Dist. LEXIS 12174 (Case No. 07-05918, N.D. Cal 2008)

21  is misplaced. Contrary to the assertion made in the Remand Motion, the parties and

22  issues in Gerber and Gleaton were not the same as this case.  In fact, *Gleaton* did

23  not involve distributor defendants; the non-diverse defendants in that case were

24  treating physicians and an imaging center.  Similarly, *Gerber* involved non-diverse

25  imaging facilities as well as distributors, and the remand order turned on the

26  specific viability of the CLRA claims – issues that have been squarely addressed in

27  the Notice of Removal in the instant case and in this Opposition. (See Section D,

28

1     *infra*.) Moreover, *Gerber* was decided before the creation of MDL-1909.[3]

2        Finally, imposing potential liability against the Distributor Defendants would

3 violate the stringent regulations placed on pharmaceuticals by the U.S. Food &

4 Drug Administration ("FDA"). Federal regulations dictate the standards for

5 manufacturing, wholesale distribution, labeling, warnings, and advertising. (See 21

6 C.F.R.§ 211, et. seq.) Manufacturers cannot ship drug products to distributors

7 unless and until the FDA has fully approved the labels, and thereafter, the labeling

8 cannot be altered without further FDA approval. (See 21 C.F.R. § 201.59.) Any

9 unauthorized alteration of the labeling is prohibited. (See 21 C.F.R. § 331.) All

10 "true and correct copies of all printed matter which is required to be included in any

11 package in which that drug is distributed and sold" – namely, the warnings and the

12 labeling – must be transmitted with the product. (See 21 C.F.R. § 331.)

13        The critically different roles in the chain of distribution between the

14 manufacturers and distributors insulate the Distributor Defendants from

15 manufacturer liability under California law. Without potential liability, the

16 Distributors Defendants are "sham" defendants, wrongfully joined to defeat

17 diversity jurisdiction.

18        Plaintiffs cite *Becraft v. Ethicon* (2000) WL 1721056 (N.D. Cal.), *Maher v.*

19 *Novartis* (2007) WL 2330713 (S.D. Cal.) and *Bostick v. Flex Equipment Company,*

20 *Inc.* (2007) 147 Cal.App.4[th] 80 for the proposition that Distributor Defendants can

21 be held strictly liable under California law, and therefore, a viable claim exists.

22 However, these cases are factually distinguishable and inapplicable to this case.

23 *Becraft* (non-prescription sutures) and *Bostick* (gym equipment) did not involve

24 prescription products, and therefore, do not rebut the fraudulent joinder analysis set

25     [3] The *Gerber* Court based its ruling that defendants failed to meet their burden of showing no
26 viable CLRA cause of action on their written opposition to remand which the Court found did not
assert any objection to the CLRA claims other than the notice deficiencies.   In addition, the
27 *Gerber* Court found that the defendants had not properly asserted that the CLRA claims were for
damages as well as injunctive relief.   Here, the GE Defendants have attacked the notice
deficiencies as well as the substantive provisions of the CLRA, and have set forth specific
28 allegations from the Complaint which identify both monetary and injunctive relief sought here.

forth in the Notice of Removal and this Opposition. In fact, *Becraft* supports Defendants' position. The *Becraft* decision requires this Court to find a nexus or causal link between the distributor and the plaintiff's injury before determining that the Distributor Defendants were not fraudulently joined. (*Becraft*, WL 1721056 *3 ("If a group of plaintiffs cannot produce any evidence (or even a good faith basis for believing) that one of its members may have received [the product] from a California distributor, the Court may find that the California distributors in that case were fraudulently joined . . . .")

Similarly, although *Maher* involved McKesson and distribution of the prescription drug Tegretol, the *Maher* court did not hold that a failure to warn cause of action was valid, ruling instead that it was not "obvious" whether or not a cause of action could be stated under the particular facts before it. (*Maher*, WL 2330713 * 4.) In so doing, the *Maher* court recognized that (unlike the facts before it) where a causal link has not been plead between the plaintiff's injury and the distributor, there is no viable state claim. (*Id.* (citing *Aronis v. Merck* (2005) 2005 WL 5518485 (E.D. Cal. 2006).)

### D. PLAINTIFFS' CLRA CLAIMS DO NOT APPLY TO GBCA PRODUCTS AND ARE JURISDICTIONALLY BARRED DUE TO LACK OF NOTICE

Plaintiffs' Remand Motion strains credulity by asserting that the GBCA products at issue in this case were for Mrs. Moorhouse's "personal purpose," which use "fits squarely within the definition of "goods" and within the purview of the CLRA." (Remand Motion p. 7.)

It is undisputed that distributors of GBCA products *cannot* make a direct sale of this prescription product to a patient such as Mrs. Moorhouse. GCBA products are prescribed by a physician and are injected by trained medical personnel while a patient is under the care of a licensed imaging facility. They are not distributed over-the-counter, or sold to the public through licensed pharmacies.

1    Yet, Plaintiffs argue that this highly regulated prescription drug "fits

2 squarely" within the class of products covered by the CLRA, namely, tangible

3 chattel bought or leased for personal or household purposes. (See Civil Code §

4 1761(a).)   A simple review of the reported CLRA cases disposes of Plaintiffs'

5 argument and illustrates the type of consumer products subject to the provisions of

6 the CLRA. GBCA drugs are nothing like bed linen (*Cattie v. Wal-mart Stores, Inc.*

7 504 F.Supp.2d 939 (S.D.Cal 2007); cell phones (*Laster v. T-Mobile USA Inc.,* 407

8 F.Supp.2d 1181 (S.D. Cal. 2005); *Von Grabe v. Spring PCS*, 312 F.Supp.2d 1285

9 (C.D. Cal.  2003);) off-road vehicles (*Outboard Marine Corp. v. Superior Court*

10 (1975) 52 Cal.App.3d  30); or store-sold salmon (*Farm Raised Salmon Cases*

11 (2008) (42 Cal.4th 1077.)

12    In addition, Plaintiffs' failure to comply with the notice provisions of the

13 CLRA requires dismissal of the cause of action with prejudice. (See *Laster v. T-*

14 *Mobile USA, Inc.*, 407 F.Supp.2d at, 1195-96; *Von Grabe v. Spring PCS*, 312

15 F.Supp.2d at 1304; *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939.)   Section

16 1782 of the Cal. Civil Code mandates that 30 days before commencing a CLRA

17 action, the plaintiff must "[n]otify the person alleged to have employed or

18 committed methods, acts, or practices declared unlawful by Section 1770 of the

19 particular alleged violations of 1770." (Cal. Civil Code § 1782 (a)(1).)   The notice

20 provisions of the CLRA are jurisdictional and must be applied literally.   (See

21 *Outboard Marine Corp. v. Superior Court,* 52 Cal.App.3d 30.)

22    Plaintiffs admit they did not provide the required notice and erroneously

23 argue that they are exempt because the Complaint seeks only injunctive relief.

24 However, in their Sixth Cause of Action under the CLRA, Plaintiffs specifically

25 request restitution and monetary compensation in addition to injunctive relief. (See

26 Complaint ¶ 96.) In addition, Prayer No. 2, applicable to all causes of action, seeks

27 "[c]ompensatory damages in excess of the jurisdictional amount, including, but not

28 limited to pain, suffering, emotional distress, loss of enjoyment of life, loss of

consortium, and other non-economic damages in an amount to be determined at trial of this action." (See Complaint Prayer 2.) Because Plaintiffs expressly seek non-injunctive relief, Section 1782(d) does not apply, and Plaintiffs' CLRA claims are barred.

**E.    THIS COURT SHOULD STAY THIS MATTER AND DEFER THE REMAND MOTION**

Judicial economy will be well-served by deferring the Remand Motion. Generally, federal courts should resolve jurisdictional issues before determining whether a stay is appropriate. (See *Smith v. Mail Boxes, Etc.*, 191 F.Supp.2d 1155, 1157 (E.D. Cal. 2002). However, "the calculus changes somewhat when deference to a MDL court will further 'the uniformity, consistency, and predictability in litigation that underlies the MDL system.'" (*Leeson v. Merck & Company*, 2006 WL 3230047 *1 (quoting *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1053 (N.D. Cal. 2004).)

In *Johnson v. Merck & Company*, Hon. William Alsup ruled in identical circumstances that the granting of a motion to stay pending transfer of the case to an MDL obviates any need for a ruling on the motion for remand. *Johnson* was one of multiple cases filed nationwide against Merck & Company related to the drug VIOXX®. (See *Johnson v. Merck & Company*, 2007 WL 754882 *2.) As in the instant case, the plaintiff in *Johnson* also named McKesson as an alleged non-diverse defendant in order to defeat removal jurisdiction. The VIOXX® defendants filed a motion to temporarily stay the case pending transfer to an established MDL. Plaintiffs sought to trump the stay issue by filing a motion for remand based upon absence of diversity jurisdiction, and seeking to have the remand motion heard prior to the stay motion. (See *Id.*)

> Plaintiff argues that the merits of his motion to remand should be addressed before a motion to stay is granted. In view of the MDL, however, doing so would unnecessarily duplicate work, and could lead to inconsistent results....It would be an inefficient use of

resources to unnecessarily duplicate the efforts of the transferee judge, who will undoubtedly face most (if not all) of the same issues in dealing with the other pending remand motions. (See *Id.*)

See also, *Valentine v. Merck & Co.*, 2007 U.S. Dist. LEXIS 14531 (E.D. Cal. 2007); *Johnson v. Merck & Co.*, 2005 U.S. Dist. LEXIS 40707 (N.D. Cal. 2005); *Purcell v. Merck & Co.*, 2005 U.S. Dist. LEXIS 41239 (S.D. Cal. 2005) (stay granted prior to consideration of remand motion although transfer to MDL had not been ordered).

In the instant case, where the MDL for GBCA cases has been established as of February 27, 2008, and where virtually every GBCA case in the United States either has already been ordered transferred, or is in the process of such transfer, to the MDL Court in the Northern District of Ohio, Removing Defendants respectfully suggest that the prudent course would be to stay the case and allow the Hon. Dan A. Polster to issue consistent rulings on the all the cases where similar remand issues pending – California, New Jersey and Louisiana. Otherwise, there will be a high likelihood of inconsistent rulings, duplicative work and inefficient use of resources by local district courts, including the instant Court.

Moreover, the Removing Defendants will be prejudiced if the Court addresses the Remand Motion prior to the Stay Application. If this Court denies Plaintiffs' Remand Motion, then Plaintiffs will have a "second bite at the apple" once the case is transferred to the MDL court since the MDL court will necessarily address the issue of fraudulent joinder of non-diverse defendants. (See *Leeson v. Merck & Company*, 2006 WL 3230047 *4.) "'Although transferee judges generally respect any orders of a transferor judge,' experience teaches that this not always the case." (*Id.* (citing *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1361 (C.D. Cal. 1997).) The Removing Defendants should not have to defend against the same motion repeatedly brought by the same plaintiff. (See *Leeson v. Merck &*

1    *Company*, 2006 WL 3230047 *4.)    If this Court finds that the non-diverse

2    defendants were not fraudulently joined, and the MDL court holds otherwise in

3    other cases across the country where non-diverse facilities and distributors are also

4    named, the Removing Defendants will be burdened with a contrary decision

5    because an order to remand is not appealable. (See *Id.*)

6    **III.    CONCLUSION**

7        Removing Defendants respectfully request that this Court deny Plaintiffs'

8    Remand Motion, or alternatively, stay this action and defer ruling on the Remand

9    Motion.

10   Dated:  May 20, 2008                    KUTAK ROCK LLP

11

12                                    By: *Stephanie Hingle*

13                                    Deborah C. Prosser
                                      Stephanie A. Hingle
14                                    Attorneys for Defendants
                                      GENERAL ELECTRIC COMPANY
15                                    and GE HEALTHCARE INC.

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT .................................................................. 2

LEGAL ARGUMENT    ........................................................................ 3

    I.    RELEVANT FACTUAL AND
        PROCEDURAL BACKGROUND ........................................... 3

        A.    THE COMPLAINT ....................................................... 3

        B.    EVIDENCE IN SUPPORT OF REMOVAL ................... 5

        C.    ALTERNATIVE REQUEST TO DEFER
               RULING ON REMAND................................................. 5

    II.    ARGUMENT ..................................................................... 6

        A.    THE FRAUDULENT JOINDER STANDARD............. 6

        B.    THERE IS NO FACTUAL NEXUS BETWEEN
               THE DISTRIBUTOR DEFENDANTS AND
               THE PRODUCTS NAMES IN THIS CASE................... 7

        C.    NONE OF PLAINTIFFS' CLAIMS AGAINST
               THE DISTRIBUTORS ARE VIABLE UNDER
               STATE LAW ................................................................. 8

        D.    PLAINTIFF'S CLRA CLAIMS DO NOT
               APPLY TO GBCA PRODUCTS AND
               JURISDICTIONALLOY BARRED DUE TO
               LACK OF NOTICE ...................................................... 12

        E.    THIS COURT SHOULD STAY THIS
               MATTER AND DEFER THE REMAND
               MOTION ..................................................................... 14

    III.    CONCLUSION ................................................................. 16

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Owens-Corning Fiberglass Corp.*
(1991) 53 Cal.3d 987, 1001..............................................................8

*Aronis vs. Merck & Co.*
2005 WL 5518485 (E.D. Cal. 2006).........................................7, 12

*Beatty v. Merck & Co.*
2006 WL 2943090 (E.D. Cal. 2006).............................................8

*Becraft v. Ethicon*
(2000) WL 1721056 (N.D. Cal.)...........................................11, 12

*Black vs. Merck & Company*
2004 WL 5392660 (C.D. Cal. March 3, 2004)..............................8, 9

*Bostick v. Flex Equipment Company, Inc.*
(2007)...........................................................................11

*Brown vs. Superior Court*
44 Cal.3d 1049, 1061 (1988).....................................................9

*Carlin v. Superior Court*
(1996) 13 Cal.4th 1104, 1111-12..............................................8, 9

*Cattie v. Wal-mart Stores, Inc.*
504 F.Supp.2d 939 (S.D.Cal 2007)............................................13

*Cline v. Merck & Co.*
2006 W L 1409555 (E.D. Cal. 2006)...........................................8

*Conroy v. Fresh Del Monte Produce, Inc.*
325 F.Supp.2d 1049, 1053 (N.D. Cal. 2004)................................14

*English v. Merck & Co.*
2007 U.S. Dist. LEXIS 14493 (E.D. Cal. 2007)...........................8

*Ethington v. General Electric Company, et. al.*
Civil Action No. 05985-MLC-TJB...........................................6

*Farm Raised Salmon Cases*
(2008) 42 Cal.4th 1077............................................................13

*Geffen vs. General Electric Company, et. al.*
Civil Action No. 2:08-cv-1110 SGL (JCRx)...............................5, 6

*Gerber v. Bayer Corp.*
2008 U.S. Dist. LEXIS 12174 (Case No. 07-05918, N.D. Cal 2008)..2, 10, 11

*Gleaton v. General Electric Company*
Civil Action No. 2-08-cv-01226................................................2, 10

*Harris v. Bayer Healthcare Pharmaceuticals, Inc.*
    Civil Action No. 2:08-cv-01896 SGL (JCRx)....................................6

*Johnson v. Merck & Company*
    2007 WL 754882 (N.D. Cal. 20007)......................................3, 6, 14, 15

*Laster v. T-Mobile USA, Inc.*
    407 F.Supp.2d 1181, 1195-96 (S.D. Cal. 2005)............................13

*Leeson v. Merck & Company*
    2006 WL 3230047 (E.D. Cal. 2006)..........................2, 8, 9, 14, 15, 16

*Maffei v. Allstate Ins. Co.*
    412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006)...............................2, 6

*Maher v. Novartis*
    (2007) WL 2330713 (S.D. Cal.)..........................................11, 12

*Outboard Marine Corp. v. Superior Court*
    (1975) 52 Cal.App.3d 30).................................................13

*Purcell v. Merck & Co.*
    2005 U.S. Dist. LEXIS 41239 (S.D. Cal. 2005)............................15

*Rivers v. Walt Disney Co.*
    980 F.Supp. 1358, 1361 (C.D. Cal. 1997)................................15

*Shelton v. General Electric Company, et al.*
    Civil Action No. 07-01951................................................6

*Smith v. Mail Boxes, Etc.*
    191 F.Supp.2d 1155, 1157 (E.D. Cal. 2002)..............................14

*TPS Utilicom Services, Inc.*
    223 F.Supp.2d 1089, 1102 (C.D. Cal. 2002)..............................6, 9

*Vantine v. Merck & Co.*
    2007 WL 516389 (E.D. Cal. 2007)........................................8

*Valentine v. Merck & Co.*
    2007 U.S. Dist. LEXIS 14531 (E.D. Cal. 2007)...........................15

*Von Grabe v. Spring PCS*
    312 F.Supp.2d 1285 (C.D. Cal. 2003).....................................13

*Wilson v. Republic Iron & Steel Co.*
    257 U.S. 92, 97 (1921)..................................................6

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

**Statutes**

Cal. Civil Code § 1761(a)................................................................13

Cal. Civil Code § 1782 ................................................................13

Cal. Civil Code § 1782 (a)(1)........................................................13

Cal. Civil Code § 1782(d)..............................................................14

21 C.F.R. § 201.59....................................................................11

21 C.F.R.§ 211, et. seq................................................................11

21 C.F.R. § 331........................................................................11

Rule 12(b)(6)..........................................................................6

28 U.S.C. 1441(b)......................................................................2

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND**

10

11  CAROL MOORHOUSE and                    Case No.  3:08-CV-01831 SBA
    JAMES MOORHOUSE,
12
                   Plaintiffs,
13                                          **[PROPOSED] ORDER DENYING**
                                           **PLAINTIFFS' MOTION FOR**
14        v.                               **REMAND**

15  BAYER HEALTHCARE
    PHARMACEUTICALS, INC.;
16  BAYER HEALTHCARE LLC;                  **[Jury Trial Demanded]**
    GENERAL ELECTRIC
17  COMPANY; GE HEALTHCARE,                (San Francisco County Superior Court,
    INC.; COVIDIEN, INC.;                  Case No.: CGC-08-472978)
18  MALLINCKRODT, INC.;
    BRACCO DIAGNOSTICS, INC.;
19  McKESSON CORPORATION;
    MERRY X-RAY CHEMICAL
20  CORP.; and DOES 1 through 35,

21                 Defendants.

22                          __ORDER__

23       Plaintiffs' Motion for Remand is HEREBY DENIED.

24

25  DATED: _____    _____
                                     THE HON. SAUNDRA B. ARMSTRONG
26

27

28

KUTAK ROCK LLP      4838-6379-5458.1              - 1 -
ATTORNEYS AT LAW
LOS ANGELES         [PROPOSED] ORDER DENYING MOTION FOR REMAND      CASE NO.:  3:08-CV-01831 SBA